# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Marilyn Tolbert-Smith,<br>12529 Covenant Way<br>Hagerstown, MD 21742<br><br>Plaintiff,<br><br>v.<br><br>Samuel Bodman,<br>Secretary<br>U.S. Department of Energy<br>1000 Independence Avenue, S.W.<br>Washington, D.C., 20585<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 06cv1216 (RWR)<br>Judge Richard W. Roberts |

## PLAINTIFF'S MOTION TO STRIKE AS UNTIMELY FILED DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

COMES NOW Plaintiff, by counsel, and respectfully requests, pursuant to Fed. R. Civ. P. 12 (f), that the Court strike Defendant's Motion, on grounds that it was untimely filed.

Alternatively, Plaintiff requests that the Court deny Defendant's Motion in its entirety.

A proposed Order accompanies Plaintiff's Motion.

Respectfully Submitted,


Cheryl Polydor, Esq.
DC Bar Id #: 454066
John Berry, PLLC
1990 M Street, NW
Suite 610
Washington, DC 20036
Phone: (202) 955-1100
Fax: (202) 955-1101
<u>Attorney for Plaintiff Marilyn Tolbert-Smith</u>

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Marilyn Tolbert-Smith,<br>12529 Covenant Way<br>Hagerstown, MD 21742 | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 06cv1216 (RWR)<br>Judge Richard W. Roberts |
| Samuel Bodman,<br>Secretary<br>U.S. Department of Energy<br>1000 Independence Avenue, S.W.<br>Washington, D.C., 20585 | ) ) ) ) ) ) | |
| Defendant. | ) ) | |

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE DEFENDANT'S MOTION AS UNTIMELY FILED, OR ALTERNATIVELY, FOR WHOLESALE DENIAL ON THE MERITS

Plaintiff Marilyn Tolbert-Smith hereby submits this memorandum in support of her Motion to Strike Defendant's untimely filed Motion to Dismiss, or in the Alternative, for Summary Judgment, pursuant to Fed. R. Civ. P. 12(f). Plaintiff respectfully requests that that the Court decline to consider Defendant's Motion altogether, or alternatively, that it deny Defendant's Motion on the merits in its entirety, and permit her to proceed with this action.

Defendant failed to respond to the pending civil Complaint within the 60-day time period specified by Fed R.Civ. P. 12(a)(3)(A). Instead, Defendant filed a Motion to Dismiss, or in the Alternative for Summary Judgment, three days after the prescribed deadline had passed. Defendant not only filed a late response, but also failed to seek leave of the Court to do so. Accordingly, Plaintiff asks that this Court strike Defendant's Motion. Alternatively, Plaintiff asks that the Court deny Defendant's Motion in its entirety.

Defendant seeks dismissal of the Equal Employment Opportunity ("EEO") allegations in the pending Complaint, based on claims that the underlying administrative complaint and the pending civil Complaint were untimely filed. In fact, Plaintiff, by counsel, filed both the administrative complaint and the civil Complaint on time.

In addition, Defendant's argument for summary judgment on the Privacy Act claims set forth in the Complaint is equally meritless, particularly in light of the rule established in this Circuit by the Toolasprahad case. Toolasprahad v. Bureau of Prisons, 286 F. 3d 576, 584 (D.C. Circuit 2002). Further, Defendant fails in its Motion to address several of the Privacy Act violations alleged in the Complaint, and therefore, as a matter of law, is not entitled to summary judgment.

In sum, both law and fundamental fairness support a determination by the Court to strike Defendant's Motion for Dismissal or Summary Judgment, or alternatively, to deny the Motion in its entirety, and permit Plaintiff to proceed with her well-grounded allegations of employment discrimination.

## I. BACKGROUND

Marilyn Tolbert-Smith ("Plaintiff" or "Ms. Tolbert-Smith") is an experienced Program Analyst, with particular expertise in technology management, currently employed by the Office of Legacy Management at the Department of Energy ("Defendant" or Agency" or "Government").

Ms. Tolbert-Smith has worked at the Department of Energy for approximately 15 years, and in the Office of Legacy Management since its formation in December 2003. Her career has been one of stellar accomplishment, in which she takes heartfelt pride. Moreover, she has never

faced any adverse or disciplinary action, until recently, following the filing of the present lawsuit.

The pending action stems from Ms. Tolbert-Smith's simple request for reasonable accommodation, based on her disabling condition of major depressive disorder, in the form of a more flexible working arrangement and reassignment. Such measures have readily been accorded other employees in the Legacy Management Division and at the Agency generally, with or without a request for reasonable accommodation. However, since first making her request in June 2004, Ms. Tolbert-Smith not only has been denied the requested accommodation - which the Agency could readily provide at little or no cost - but she also has been subjected to an escalating pattern of demeaning, discriminatory and retaliatory treatment that defines the term "hostile environment."

Moreover, as set forth in her Complaint, the Agency has repeatedly failed to fulfill its statutory obligation to provide timely and meaningful EEO counseling to Ms. Tolbert-Smith. The Agency also has flouted its obligations under the FOIA and Privacy Act, by failing to provide any response to Ms. Tolbert-Smith's request for records relating to her reasonable accommodation request, until several months after she made the request, and only after she retained counsel. Additionally, in December 2005, the Agency placed highly personal information about Ms. Tolbert-Smith on a computer server accessible to members of the public, as well as Agency employees and contractors. Now the Agency seeks to dismiss her pending Complaint. In sum, the Agency has done everything possible to discourage Ms. Tolbert-Smith in her pursuit of a fair hearing and protection of her workplace rights.

On July 3, 2006, Ms. Tolbert-Smith, having exhausted her administrative remedies, filed the pending civil Complaint. By this Complaint, she seeks relief from the Agency's violations of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 ("Rehabilitation Act"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"); and the Privacy Act of 1974, 5 U.S.C.A. § 552a. These violations arise from the Agency's failure to reasonably accommodate Ms. Tolbert-Smith's disability; discriminatory treatment, including disability-based harassment and a hostile work environment; reprisal for Ms. Tolbert-Smith's prior participation in statutorily protected EEO activities; and the Agency's willful and unlawful disclosure of confidential information relating to her reasonable accommodation request, and medical diagnosis and treatment, without her consent.

The Agency responded to her Complaint by filing a Motion to Dismiss, or in the Alternative, for Summary Judgment. For the reasons discussed in detail below, this Court should deny the government's Motion in its entirety, and permit Ms. Tolbert-Smith to pursue her employment discrimination and related claims before this Court without further delay.

## II. **ARGUMENT**

The government seeks dismissal of the Complaint, or alternatively, summary judgment, based on allegations that Ms. Tolbert-Smith's underlying administrative complaint, and the pending civil Complaint, were untimely filed. In fact, both the administrative complaint and the civil Complaint were filed on time.

The Agency also seeks dismissal of the Privacy Act claims in the Complaint, alleging that Plaintiff Tolbert-Smith has failed to demonstrate a violation of the Act. Again, the Agency's argument is without merit. Ms. Tolbert-Smith clearly has made the necessary showing of "willful and intentional" misconduct in violation of the Act, particularly when viewed in light of the rule

established in this Circuit by the <u>Toolasprahad</u> case. <u>Toolasprahad v. Bureau of Prisons</u>, 286 F. 3d 576, 584 (D.C. Circuit 2002). Ms. Tolbert-Smith, therefore, respectfully requests that this Court deny Defendant's Motion in its entirety, and permit her to proceed with this action.

## A. THE GOVERNMENT FAILS TO CARRY THE HEAVY BURDEN NECESSARY TO PREVAIL ON ITS MOTION

The government bears a heavy burden in seeking to have this Court dismiss the Complaint, and clearly fails to carry it. First, in seeking dismissal of the employment discrimination claims, Defendant bears the burden of proving that the action is untimely. <u>See</u> <u>Bowden v. U.S.</u>, 106 F.3d 433, 437 (D.C. Cir. 1997). Defendant simply cannot do so in this case, because Ms. Tolbert-Smith filed both her administrative complaint and her federal court Complaint on time.

In seeking to dismiss Ms. Tolbert-Smith's Privacy Act claims, based on her alleged failure to state a claim, the government faces a high hurdle as well. The Supreme Court has defined the applicable standard of review as follows:

> A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief . . . The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged.

<u>See</u> <u>Conley v. Gibson</u>, 355 U.S. 41, at 45-46 (1957), as cited in <u>Schuler v. U.S.</u>, 617 F.2d 605, at 608 (D.C. Cir. 1979). In this case, the facts alleged in the Complaint demonstrate that the Agency violated Ms. Tolbert-Smith's Privacy Act rights by intentionally and willfully placing - on a computer server accessible to Agency employees as well as members of the public - records referring and relating to Ms. Tolbert-Smith's request for reasonable accommodation, based on her disability.

In addition to moving for dismissal of Ms. Tolbert-Smith's Complaint, Defendant seeks in the alternative to have this Court grant summary judgment in its favor. Again,

the Defendant bears a heavy burden, and specifically must demonstrate, pursuant to

FRCP 56 (c), "the absence of a genuine dispute of material fact." See Edwards v. EPA,

2006 WL 2965507 (D.D.C. October 18, 2006), citing Celotex Corp. v. Cattrett, 477 U.S.

317, 323 (1986). As discussed below, Defendant cannot make this showing, particularly

at this early stage of the proceedings, where Plaintiff has not even received an Answer to

her Complaint. Ms. Tolbert-Smith, on the other hand, has presented in her Complaint

clear-cut violations of the Privacy Act.

## C. MS. TOLBERT-SMITH TIMELY FILED HER FORMAL COMPLAINT

Where, as here, an agency dismisses a Formal EEO Complaint ("formal" or "administrative"

complaint) on grounds that it was untimely filed, it has the burden of establishing facts necessary

to show that the dismissal was valid. See Jackson-Bostic v. Postmaster General, EEOC No.

01A13948 (2002). The Agency cannot do so, because Ms. Tolbert-Smith, through her attorney,

filed her administrative complaint not only on time, but in advance of the deadline.

### 1. Counsel Timely Mailed the Administrative Complaint on February 9

Ms. Tolbert-Smith received her Notice on January 25, 2006.[1]  At some point, she contacted

her attorney to discuss the possibility of filing a formal administrative complaint. To ensure that

there would be no question concerning timeliness, the attorney filed Ms. Tolbert-Smith's formal

complaint within 15 days after Ms. Tolbert-Smith had received the Notice, by mailing it from her

law office via first-class mail, postage pre-paid, in an envelope with a mailing label affixed,

addressed to the Agency's Office of Civil Rights, on February 9, 2006.

However, on February 17, 2006, the envelope containing the complaint was returned by the

U.S. Postal Service, with the address label missing, and only vestiges of the glue from the back

---

[1] Ms. Tolbert-Smith received the Notice on January 25, 2006, as stated on page 5 of Defendant's Motion to
Dismiss, and not on January 17, 2006, as stated on page 6. See Defendant's Exhibit 2 (signed certified mail receipt).

6

of the mailing label remaining. The label evidently had been removed or destroyed at some point in the course of handling by the Postal Service, and the envelope had been stamped, "Return to Sender." A copy of the returned mailing envelope and complaint are attached as <u>Plaintiff's Exhibit 1</u>.

Counsel immediately transferred the complaint to a new envelope, with the address now typed directly on it, and placed the complaint in the mail for the second time. It was this mailing, with a postmark of February 17, 2006, that evidently reached the Agency. See Defendant's Motion to Dismiss, page 5. As discussed later in this Memorandum, this second mailing of the complaint was timely as well.

In any event, Ms. Tolbert-Smith may properly point to the initial mailing of her complaint to establish its timeliness. The EEOC and the courts have frequently reviewed the kind of mailing mishap that occurred here, and found the complaints at issue to be timely filed. <u>See,e.g.</u> <u>National Cement Company v. Federal Mine Safety and Health Commission</u>, 27 F. 3d 526, 531 (11th Cir. 1994) (incorrect address, resulting in return and re-mailing of complaint); <u>Thomas v. Sec'y of Transportation</u>, EEOC 01A00199 (2000) (lack of street address altogether, resulting in return and re-mailing); and <u>House v. U.S. Postal Service</u>, <u>EEOC Request No. 05910352</u> (May 1991) (incomplete address). Accordingly, Plaintiff timely filed her administrative complaint by mail on February 9, 2006. Moreover, Plaintiff timely filed again on February 17, 2006, as discussed below.

## 2. **Counsel Timely Mailed the Complaint a Second Time on Feb. 17**

The governing EEOC regulations provide that when a federal sector EEO complainant is represented by an attorney, all notices must be served on the attorney. <u>See</u> 29 CFR Section 1614.605(d). Additionally, where, as here, the agency knows that the employee is represented by

an attorney, "time frames for receipt of materials shall be computed from the time of receipt by the attorney." Id.

Ms. Tolbert-Smith agrees, as stated by the Agency, that she received the Notice of Final Interview and Right to File a Formal Complaint on January 25, 2006. However, the EEOC regulations make clear that her receipt of the Notice did not trigger the start of the 15-day timeline for filing her complaint. A recent, unpublished decision of this Court indicates judicial recognition of this rule. See Jackson v. Snow, 2006 WL 212136, page 3 (D.D.C. 2006) (unpublished).

In this case, her attorney did not receive a copy of the Notice from the Agency until February 22, 2006. Defendant neither denies this, nor the fact that Agency officials were aware that Ms. Tolbert-Smith was represented by counsel at the time it improperly sent the Notice directly to her in January 2006.

The EEOC regulations make clear that the filing deadline for Ms. Tolbert-Smith's administrative complaint was March 9, 2006; that is, 15 days following receipt of the Notice by her attorney. Therefore, Ms. Tolbert-Smith's filed her complaint not only on time, but in advance of the deadline, when she placed it in the mail on February 9, 2006 (and mailed it a second time on February 17, 2006).

The government attempts to make much of the fact that "Plaintiff, through counsel, actually filed her formal complaint 5 days" before counsel received the Notice from the Agency. Defendant's Motion to Dismiss, page 6. Defendant seizes on this point to claim that "counsel received the Notice well before the complaint alleges." Id.

In fact, the Complaint accurately and properly states that Ms. Tolbert-Smith's attorney received a copy of the Notice on February 22, 2006. Under the EEOC regulations, this is the

legally significant date that triggered the running of the 15-day period for filing the administrative complaint. 29 CFR Section 1614.605(d).

Counsel acknowledges that she learned that her client had received the Notice some time before February 17 - and even before February 9, 2006 - when she initially filed the administrative complaint. However, the Agency is plainly wrong in claiming that this proves that the complaint was untimely filed.

In sum, Ms. Tolbert-Smith, through counsel, timely filed her administrative complaint. Accordingly, the "equitable tolling" cases cited by the government are inapposite. Those cases concern EEO complainants who missed their filing deadlines, and unsuccessfully sought equitable tolling. Ms. Tolbert-Smith, on the other hand, filed her complaint on time.

The remaining cases cited by Defendant are equally unavailing. For example, Defendant inaccurately cites the Irwin case for the proposition that "Plaintiff's argument that the date counsel received the notice is the operative time frame is without legal merit." Defendant's Motion to Dismiss, page 6. In Irwin, an EEO complainant was found to have missed the 30-day filing deadline applicable to his case when he filed 29 days after he received notice, but 44 days after his attorney received it. See Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96. Thus, contrary to Defendant's representations, the Irwin case concerns a situation that is diametrically opposed to the facts in the present case.

The Agency also states incorrectly that Ms. Tolbert-Smith received her Notice on January 17, 2006. In reality, the signed certified mail receipt, submitted by Defendant with his Motion to Dismiss, documents a delivery date of January 25, 2006. See Defendant's Exhibit 2.

Finally, the Agency's argument that Ms. Tolbert-Smith failed to diligently pursue her rights in this matter is hypocritical, as well as false. First, Defendant failed to timely file its Answer or

otherwise respond to the pending Complaint. Moreover, Defendant earlier failed to timely meet its obligations in the processing of the underlying administrative charge and complaint. The applicable EEOC regulations require federal agencies to complete the counseling process within 30 days of the initial contact by the employee. 29 CFR 1614.105(d)-(e).

As Defendant concedes, Ms. Tolbert-Smith first contacted the EEO Office in August 2005, to request counseling and thereby initiate the EEO process. See Defendant's Exhibit 1, Notice of Final Interview and Right to File a Formal Complaint. However, the Agency did not complete counseling in Ms. Tolbert-Smith's case until January 11, 2006 – almost a half-year later. Id.

## D. MS. TOLBERT-SMITH TIMELY FILED HER CIVIL COMPLAINT ON JULY 3

As stated in the Complaint, Ms. Tolbert-Smith, through her attorney, received Defendant's Notice of Dismissal of her administrative complaint on April 3, 2006.[2] Complaint at ¶ 18. Accordingly, the deadline for filing the present action was July 3, 2006. As discussed below, Plaintiff, through counsel, met the deadline.

In short, despite the government's claims to the contrary, Ms. Tolbert-Smith's attorney personally filed the pending Complaint on July 3, 2006, in the after-hours "speedy-filing" box maintained by this Court at the Third Street entrance. Counsel acknowledges, however, that the Office of the Clerk nevertheless mistakenly docketed the Complaint as filed on July 5, 2006, apparently as the result of some confusion in the manner of filing, as described in detail below.[3]

---

[2] On receiving the Notice of Dismissal, Ms. Tolbert-Smith's attorney contacted Katie Strangis, Esq.,with the Agency's Office of the General Counsel, to explain that she had in fact timely filed the administrative complaint. Counsel also offered to provide the Agency with evidence of the initial mailing (see Plaintiff's Exhibit 1), but Ms. Strangis told her that the agency would not re-consider the matter.

[3] The intervening Fourth of July Holiday, during which the Court was closed, evidently complicated the situation.

Immediately after discovering that the Complaint she had personally delivered to the "speedy filing" box on July 3, had been docketed with a filing date of July 5, counsel sought to resolve the matter with the Office of the Clerk, and was informed that such matters could only be ruled upon by the presiding Judge in this matter. Accordingly, counsel respectfully submits this Memorandum and the accompanying Exhibits (see <u>Plaintiff's Exhibits 2 and 3</u>, as discussed below), in order to demonstrate that, as a matter of law, she filed the pending Complaint on time.

On July 3, 2006, Plaintiff's counsel arrived at the Third Street entrance of the Court several minutes before midnight, prepared to file the Complaint without delay. However, she was disconcerted to discover that the three different time clocks designated for the three different courts that accept filings at the "speedy filing" box (the United States Bankruptcy Court; the United States District Court for the District of Columbia; and the United States Court of Appeals for the District of Columbia Circuit) were all set at different times, and even different dates, that evening. The Bankruptcy Clock, for example, displayed the impossible date of "July 33, 2006," and a time of "PM 11:59." The date-stamped copy of the Complaint counsel brought back to the office for her records contains this date and time stamp (please see <u>Plaintiff's Exhibit 2</u>), as well as the date and time of "July 34, 2006" and "AM 12:03" with the imprint of the "U.S. Court of Appeals for the D.C. Circuit." The copy does not, however, have a legible stamp of any kind associated with the United States District Court for the District of Columbia, where she actually filed the Complaint, by placing it in the designated slot.

However, concerned about the unsettling array of dates and times she had encountered that night, counsel telephoned the Office of the Clerk the very next business day (July 5), in order to confirm that the Complaint had been properly docketed. However, to her dismay, the employee she spoke with informed her that the Complaint had been placed on the docket with a

filing date of July 5, 2006. Counsel informed the employee about the confusion she had encountered on July 3, and the fact that she had brought back to her office a date-stamped copy of the Complaint imprinted with a time of "PM 11:59" and "July 33, 2006" (obviously July 3, in reality). The employee told her that the Office of the Clerk could do nothing, and that such issues must be addressed as needed by the presiding Judge.

Subsequently, counsel received the returned Summonses issued by the office of the Clerk. While two of the three Summonses reflected a date of July 5, 2006, the Summons to be served upon the United States Attorney General contained a date stamp of "July 3, 2006," next to the Clerk's stamped name, with the Deputy Clerk' signature below. See Plaintiff's Exhibit 3. The same Summons elsewhere reflects a date stamp of "July 5, 2006."

On these facts, this Court clearly should find the Complaint timely filed on July 3, 2006. A review of the case law reveals that, not surprisingly, courts have resolved similar date-stamping and processing ambiguities in favor of the filing party. See, e.g. Toliver v. Sullivan Diagnostic Treatment Center, 748 F. Supp. 223 (S.D. N.Y. 1990) (Title VII complaint was timely filed, notwithstanding that documents were formally stamped "received" three days later); Loya v. Sands Unified School Dist., 721 F.2d 729 (9th Cir. 1983) (trial court erred in dismissing Title VII complaint where improperly completed copy of complaint arrived in custody of clerk within the filing period, although corrected copy was not filed until later). See also Perry v. Galludet Univ., 738 A.2d 1222 (D.C. 1999) (employee's complaint effectively filed when left in after-hours box, although marked "filed" the following day); Liss v. Feld, 691 A.2d 145, 147 (D.C. 1997).

Counsel respectfully submits that a contrary result in the present case arguably would reduce the federal court filing process to the equivalent of a Kafkaesque game of "chutes and ladders."

Thus, Ms. Tolbert-Smith, by her attorney, timely filed the pending civil action. If, however, the Court should find this statement open to question, counsel respectfully requests that the Court exercise its discretion to excuse a filing delay –if any - that literally amounts only to a matter of seconds, under the equitable tolling doctrine. The federal courts generally have made clear that employment discrimination claims under Title VII are particularly appropriate for application of the doctrine. See, e.g. Bethel v. Jefferson, 589 F. 2d 631, 642 (D.C. Cir. 1978) (calling for interpretation of Title VII "animated by [its] broad humanitarian and remedial purpose" and criticizing the "application of technicalities to foreclose recourse to [its] administrative or judicial processes.")[4] See also GLUS v. G.C. Murphy Co., 562 F.2d 880, 887-888 (1978) ("jurisdictional requirements for bringing suit under Title VII should be liberally construed.") Accord, Tavernaris v. Beaver Area School District, 454 F. Supp. 355 (W.D. Pa 1978) (applying by analogy Fed. R. Civ. P. 6(e) to determine that a Title VII action had been timely filed, given "the expressed desire of Congress and the judiciary that Title VII claimants be accorded ready access to litigate their charges').

The present case would seem to present particularly suitable circumstances for the Court to apply equitable tolling, in light of the Agency's almost half-year delay in processing Ms.

---

[4] Although the complainant who benefited from the court's application of the equitable tolling doctrine in this case was not represented by counsel, the court noted generally that "Title VII is rife with procedural requirements sufficiently labyrinthine to baffle even the most experienced lawyer." Bethel v. Jefferson, 589 F. 2d 631, at 641, n. 61.

Tolbert-Smith's underlying EEO charge, and its more recent failure to timely respond to the Complaint.

Moreover, Ms. Tolbert-Smith today prepares to file an Amended Complaint with this Court, occasioned by the Agency's recent dismissal of two formal EEO complaints, filed on July 7 and July 18, 2006, respectively, which it deemed like or related to the pending litigation, and accordingly declined to process at the administrative level. Thus, the Agency certainly will not be prejudiced if the present Complaint is allowed to stand.

In sum, Ms. Tolbert-Smith, by counsel, submits that permitting her to finally "have her day in court" will best serve the interests of justice and fundamental fairness.

E.  **IN ACCORDANCE WITH THE LAW OF THIS CIRCUIT, MS. TOLBERT-SMITH HAS ESTABLISHED A SERIES OF WILLFUL AND NTENTIONAL VIOLATIONS OF HER PRIVACY ACT RIGHTS**

The Agency seeks summary judgment on the Privacy Act allegations in Ms. Tolbert-Smith's Complaint, on grounds that she has failed to make the necessary showing of "intentional or willful" misconduct. However, the Agency's analysis of the "intentional or willful" requirement is plainly deficient in one key regard. The D.C. Circuit has carved out a rule for establishing agency intent in Privacy Act cases that clearly applies in the present case.

The rule essentially states that, if it can be established that an agency's violation was a result of retaliation against the plaintiff, the "intentional or willful" requirement has been met. See Toolasprashad v. Bureau of Prisons, 286 F.3d 576, 584 (D.C. Cir. 2002); see also Downie v. City of Middleburg Hts., 301 F.3d 688, 697-99 (6th Cir. 2002).

In Toolasprashad, involving a federal prisoner's challenge to inmate transfer records allegedly falsified by prison officials, the agency argued and the court below found that "the record would not support a finding that defendants acted willfully or intentionally." Toolasprashad, 286 F.3d 576, 584. However, the D.C. Circuit disagreed, holding that a showing

that agency officials were motivated by retaliation satisfies the definition of a "willful or intentional" violation of the Privacy Act. Id.

The court's reasoning is particularly apt in capturing the hostile dynamic operating at Ms. Tolbert-Smith's place of work. That is, the court found in Toolasprashad that the prison officials' falsification of his transfer records "capped" a series of increasingly hostile and abusive incidents that appeared to be motivated by retaliation for the plaintiff's having pursued several grievances in an attempt to protect his rights.

Similarly, the Agency's placement of highly personal information, revealing that Ms. Tolbert-Smith had a disabling condition requiring accommodation under the Rehabilitation Act, may readily be seen as the culmination of her supervisor's (Terry Brennan's) increasingly hostile and retaliatory treatment of her, including his verbally chastising her in front of colleagues for allegedly not "trying hard enough" to overcome her illness. Complaint at ¶ 45.

Thus, Ms. Tolbert-Smith's Complaint sets forth a series of Privacy Act violations that call for denial of the Agency's Motion for Summary Judgment. As stated above, summary judgment motions must be construed in the light most favorable to the nonmoving party, who can defeat the motion simply by showing it is possible that a reasonable jury would find in her favor.

### III. CONCLUSION

For the reasons discussed above, the Court should either decline altogether to consider the Agency's Motion for Dismissal or Summary Judgment, or deny the Motion on the merits in its entirety, and permit Ms. Tolbert-Smith to pursue her employment discrimination and related claims before this Court, without further delay.

Respectfully Submitted,


Cheryl Polydor, Esq.
DC Bar Id #: 454066
John Berry, PLLC
1990 M Street, NW
Suite 610
Washington, DC 20036
Phone: (202) 955-1100
Fax: (202) 955-1101
<u>Attorney for Plaintiff Marilyn Tolbert-Smith</u>


Dated: October 25, 2006

JOHN BERRY, P.L.L.C.
ATTORNEYS AT LAW
1990 M STREET, N.W., SUITE 610
WASHINGTON, D.C. 20036
WWW.WORKLAWS.COM

JOHN V. BERRY
ROBERT P. WALDECK
CHERYL POLYDOR
SARA C. VINS*

*ADMITTED ONLY IN VIRGINIA,
PRACTICING IN D.C. PENDING ADMISSION
UNDER SUPERVISION
OF JOHN V. BERRY, ESQ.

TELEPHONE: (202) 955-1100
FACSIMILE: (202) 955-1101

Director
U.S. Department of Energy - Office of Civil Rights & Diversity
Forrestal Building, Room 5B-168
1000 Independence Ave. SW
Washington, DC 20585

**Re:  Marilyn Tolbert-Smith - Formal Complaint of Discrimination**

**By First-Class Mail**
February 9, 2006

Dear Sir or Madam:

    Please find attached a formal complaint of discrimination for Marilyn Tolbert-Smith. Also attached is a copy of the Designation of Representative form signed by Ms. Tolbert-Smith, designating me as her legal representative. Because the Notice of Final Interview sent to Ms. Tolbert-Smith did not contain the DOE forms for these matters, I have provided the necessary information without them. If you have any questions, please contact me at (202) 955-1100.

    Thank you for your attention to this matter.

Sincerely,

Cheryl Polydor
Senior Associate

cc:    Marilyn Tolbert-Smith
       File

Enclosures

*Exhibit* 1

# FORMAL COMPLAINT OF DISCRIMINATION

### Complainant's Name and Address
Marilyn Tolbert-Smith
12529 Covenant Way
Hagerstown, MD 21742

### Complainant's Home Telephone
301-797-5902

### Complainant's E-Mail
TolbertSmith@aol.com

### Complainant's Employment Status
Ms. Tolbert-Smith is employed with DOE's Office of Legacy Mangement. She has been on forced administrative leave since July 2005, despite her physician's September 2005 determination that she was then ready to return to work, and fully capable of performing her duties with reasonable accommodation.

### Most Recent Instances of Alleged Discrimination
Management continues to date to subject Ms. Tolbert-Smith to unlawful and demeaning discrimination, harassment, retaliation and a hostile work environment. Some of the most recent examples are as follows:

(1) Management's current ongoing failure to contact Ms. Tolbert-Smith regarding a start date for her return to work, despite receipt of the January 2006 clinical report prepared by Dr. Prescott, her physician. Dr. Prescott stated in the report that Ms. Tolbert-Smith was prepared to return to work with reasonable accommodation. Management's deafening silence regarding a start date despite Dr. Prescott's positive clinical report – which echoes the report he made back in September 2005 – is one of the latest incidents in management's ongoing pattern of unlawful conduct.

(2) Management's recent restatement of its denial of Ms. Tolbert-Smith's repeated requests for reasonable accommodation, except to the extent of suggesting that she continue to avail herself of the services of DOE's "EAP" Office, which is of course available to all DOE employees. See Letter of February 4, 2006, signed by Celinda Crawford, Director, Office of Legacy Mgmt., Office of Business Resources and addressed to Ms. Tolbert-Smith's attorney, Cheryl Polydor, Esq. See also Letter of December 22, 2005, signed by Celinda Crawford, and addressed to Ms. Tolbert-Smith (management's initial response to Ms. Tolbert-Smith's requests for reasonable accommodation). This spurious offer of accommodation violates management's affirmative obligations under the Rehabilitation Act of 1973, as amended. Moreover, it demonstrates the characteristically callous and flippant attitude consistently exhibited by Ms. Crawford and other management representatives regarding Ms. Tolbert-Smith, and her history of serious illness. This pervasive attitude among her supervisors in the Office of Legacy Management, and their

accompanying debasing and humiliating treatment of her, have created a hostile work environment as defined under Title VII of the Civil Rights Act of 1964, as amended.

(3) Management's radical restructuring of Ms. Tolbert-Smith's performance standards, in an evident attempt to "set her up" for failure when she does return to work. See Letter of December 22, 2005, signed by Celinda Crawford, and addressed to Ms. Tolbert-Smith (including new performance plan for Ms. Tolbert-Smith). The sheer number of responsibilities and tasks reflected in the new performance standards is well outside the norm for a typical workload in the Office of Legacy Management.

Moreover, the new performance standards fundamentally change the nature of Ms. Tolbert-Smith's job. This is directly at odds with the statement made by Terrance Brennan, Ms. Tolbert-Smith's first-level supervisor, to the EEO Counselor, in attempting to justify management's failure to grant Ms. Tolbert-Smith's repeated requests for reassignment. Mr. Brennan stated that "there was really no other supervisor in his organization that the complainant could be reassigned to because the nature of the work she did was very specific to the group . . ." (emphasis supplied). See Summary of EEO Counselor's Inquiry – Terrance Brennan, EEO Counselor's Report of January 11, 2006, p. 3. This clear-cut discrepancy between management's imposition of the new performance standards - which represents a wholesale restructuring of Ms. Tolbert-Smith's job - and her supervisor's contradictory statement that the nature of her job- as defined under her earlier performance standards- was so very specific as to preclude any serious consideration of reassignment, exposes the discriminatory motivation for management's treatment of Ms. Tolbert-Smith. Management's "talking out of both sides of its mouth" is classic evidence of pretext.

### Bases of Discrimination Alleged
These include:
Disability and/or history of disability and/or perception of disability – mental disability (clinical depression); Harassment and Hostile Work Environment; Failure to Accommodate; Retaliation/Reprisal as defined under Title VII and the FMLA; Age

### Alleged Discriminating Officials
The alleged discriminating officials include the following:
Michael Owen; Celinda Crawford; Terrance Brennan - DOE Office of Legacy Management
Theresa Summers - DOE Employee Labor Relations Department

### EEO Counselor
Gerald P. Tognetti

### Date of Initial EEO Contact
August 31, 2005

### Date of Final Interview and EEO Counselor's Report
January 11, 2006

**Discriminatory Action(s) Alleged**

The discriminatory treatment that forms the basis of this Formal Complaint of Discrimination has occurred primarily during the period beginning May 2004 and continuing to the present.

This discriminatory treatment includes the most recent examples of management's unlawful conduct of Ms. Tolbert-Smith described at page 1 of this Complaint, as well as the incidents of unlawful conduct alleged in Ms. Tolbert-Smith's underlying EEO charge, and reported to the EEOC Counselor (hereby incorporated by reference in this Complaint).

With reference to the underlying EEO charge, evidence of management's discriminatory treatment of Ms. Tolbert-Smith is found in the statements made by management officials to the EEO Counselor, as summarized in the EEO Counselor's Report, at pp. 3-4. For example, both Terrance Brennan, Ms. Tolbert-Smith's first level supervisor, and Celinda Crawford, her second level supervisor, made statements that reveal their discriminatory and/or retaliatory treatment of Ms. Tolbert-Smith; expose the hostile environment in which she has worked; and indicate hostile and stereotypical attitudes to her illness and right to reasonable accommodation. For example, Mr. Brennan states that he "bent over backwards to accommodate [her]." Ms. Crawford states that Ms. Tolbert-Smith's "medical condition is such that it didn't really matter who she worked for."

Additional instances of the unlawful treatment suffered by Ms. Tolbert-Smith to date include:

(1) Management's failure to respond to Ms. Tolbert-Smith's repeated requests for reasonable accommodation for approximately a year and a half, until December 2005.

(2) Management's actual *explicit discouragement* of Ms. Tolbert-Smith's requests for reasonable accommodation, and her attempts to discuss the lack of response to her requests. In particular, Terrance Brennan and Celinda Crawford, her first and second level supervisors, respectively, told Ms. Tolbert-Smith not to contact Michael Owen, Director of the Office of Legacy Management regarding her reasonable accommodation requests. Further, Mr. Owen himself discouraged Ms. Tolbert-Smith's attempts to speak with him or otherwise contact him.

Further, it appears that the EEO Counselor did not contact Mr. Owen during the counseling period. A review of the "Summary of Counselor's Inquiry" in the EEO Counselor's Report reveals no record of the Counselor's contacting, or attempting to contact him.

(3) Management's failure to engage in good faith with Ms. Tolbert-Smith in the interactive process required under the Rehabilitation Act to identify and provide reasonable accommodation. Management failed to do so despite its awareness of her disability, and her explicit requests for assistance and accommodation.

(4) Management's utterly deficient response to Ms. Tolbert's request for accommodation, documented in Celinda Crawford's December 22, 2005 Letter (discussed at page 1 of this Complaint).

(5) Management's improper and unlawful involvement and interference in Ms. Tolbert-Smith's medical care, most strikingly epitomized by their contacting her physician, Dr. Prescott, to discuss her medical condition without her authorization, and treating her in a coercive manner that influenced and facilitated her hospitalization in July 2005. This conduct in particular represents an egregious violation of Ms. Tolbert-Smith's civil rights and privacy rights, in conjunction with her EEO rights.

(6) Management's placing Ms. Tolbert-Smith, and forcing her to remain to date, on extended administrative leave, based on the unfounded, pretextual justification that her illness compelled and compels it – notwithstanding the clinical determinations made and reported by Dr. Prescott, Ms. Tolbert-Smith's physician –in March 2005, September 2005 and again in January 2005 - that she was/is able to return to work with reasonable accommodation.

(7) Management's creation and tolerance of a hostile work environment, including but not limited to the actions described elsewhere in this Complaint, as well as a pattern of painfully degrading and humiliating treatment and comments made to her and about her, often in the presence and hearing of her colleagues. For example, Terrance Brennan, Ms. Tolbert-Smith's direct supervisor, has on more than one occasion (a) verbally chastised her for "not trying hard enough" to overcome her illness; (b) questioned whether she is "taking her meds;" (c) made belittling remarks about the efficacy of her medical treatment; (d) made disparaging remarks about Dr. Prescott's ability to provide her with effective professional treatment; and
(e) suggested to Ms. Tolbert-Smith's colleagues that they "pray for her." Mr. Brennan's conduct represents an egregious violation of Ms. Tolbert-Smith's privacy rights as well as her EEO rights.

(8) A period of particularly hostile and abusive treatment by Mr. Brennan around the time of, and during, an offsite business retreat in June 2005. This episode, characterized by his ostentatiously shunning her at the retreat site. and then abusing her verbally at the office, was made even more stressful and distressing to Ms. Tolbert-Smith given the presence of her son (whose attendance was approved in advance by management).

(9) Management's refusal to approve work-related training (e.g., the "Enterprise Architecture" training she sought in March 2005), despite the availability of funds, her need for such training to better perform her assigned duties and the opportunity for such training afforded similarly-situated non-disabled employees.

(10) The failure by management to comply with statutory time limits for responding to Ms. Tolbert-Smith's outstanding FOIA/Privacy Act request for materials containing further support for this Complaint (in particular, e-mail correspondence between Ms. Tolbert-Smith and several management representatives).

4

**Requested Remedy**

(1) The opportunity to return to work with reasonable accommodation, including but not limited to reassignment

(2) Back pay

(3) Front pay

(4) "Make whole" relief, including any lost pay, benefits and seniority resulting from management's unlawful conduct

(5) Compensatory damages, including but not limited to reimbursement for medical and other expenses; attorneys' fees; and compensation for severe emotional suffering and stress, and damage to professional reputation and professional status

(7) Interest

(8) Any and all other forms of relief which may be deemed appropriate in this matter

**No Grievance, MSPB Appeal or Civil Action in U.S. District Court**
To date, Ms. Tolbert-Smith has not pursued the allegations in this Complaint in any other formal proceeding.

## DESIGNATION OF REPRESENTATIVE

I, Marilyn Tolbert-Smith hereby designate the law firm of John Berry, P.L.L.C., located at 1990 M Street, N.W., Suite 610, Washington, D.C., 20036, (202) 955-1100, to represent me in my legal matters.   Please provide that Firm with copies of any information that you would normally provide me to this Law Firm, upon request.


_Marilyn Tolbert-Smith_
Marilyn Tolbert-Smith

11/30/2005
Date

JOHN BERRY, P.L.L.C.
ATTORNEYS AT LAW
1990 M STREET, N.W., SUITE 610
WASHINGTON, D.C. 20036





JOHN BERRY, P.L.L.C.
ATTORNEYS AT LAW
1990 M STREET, N.W., SUITE 610
WASHINGTON, D.C. 20036



```
* * *
1 5 2
0 5 0 0 # 00.630 PB8766493
3 9 2 3       FEB 17 06
                    20036
WASHINGTON DC
```

Director
U.S. Department of Energy - Office of Civil Rights &
Diversity
Forrestal Building, Room 5B-168
1000 Independence Ave. SW
Washington, DC 20585

RECEIVED
U.S. COURT OF APPEALS
FOR THE D C CIRCUIT
2006 JUN 30 AM 12:03
FILING DEPOSITORY

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Marilyn Tolbert-Smith, <br> 12529 Covenant Way <br> Hagerstown, MD 21742 <br><br> Plaintiff, <br><br> v. <br><br> Samuel Bodman, <br> Secretary <br> U.S. Department of Energy <br> 1000 Independence Avenue, S.W. <br> Washington, D.C., 20585 <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Civil Action No. _____

## COMPLAINT

### I.   INTRODUCTION

Plaintiff Marilyn Tolbert-Smith ("Plaintiff" or "Ms. Tolbert-Smith") brings this

Complaint against the United States Department of Energy ("Defendant" or "Department"), for

violations of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 ("Rehabilitation

Act"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII");

and the Privacy Act of 1974, 5 U.S.C.A. § 552a. These violations arise from the Defendant's

failure to reasonably accommodate Plaintiff's disability; Defendant's discriminatory treatment of

Plaintiff, including disability-based harassment and a hostile work environment created by

management officials in the Defendant's Office of Legacy Management ("LM") and other

offices; Defendant's reprisal for Plaintiff's prior participation in statutorily protected Equal

Employment Opportunity ("EEO") activities; and Defendant's willful and unlawful disclosure of

Exhibit _____

confidential information relating to Plaintiff's reasonable accommodation request, and medical

diagnosis and treatment, without her consent.

## II.    JURISDICTION

1.    This action is authorized pursuant to Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. § 2000e, *et seq*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §

791; and the Privacy Act of 1974, 5 U.S.C.A. § 552a.

2.    Jurisdiction of this court over the Title VII and Rehabilitation Act claims is founded upon

28 U.S.C. §§ 1331 and 1343.

3.    Jurisdiction of this court over the Privacy Act claim is founded upon 5 U.S.C.

§§ 552a(g)(1)(D), because Defendant improperly and illegally disclosed confidential information

about Plaintiff without her consent from its records.

## III.    VENUE

3.    Venue is proper in this court pursuant to 42 U.S.C. § 2000e(5)(f)(3).  Venue is proper in

the District of Columbia because the "employment records relevant" to the unlawful employment

practice alleged in this case "are maintained and administered" in the District of Columbia.  The

Defendant also has its principal office, or headquarters,  in the District of Columbia.

4.    Venue is also proper in this Court pursuant to 5 U.S.C. § 552a(g)(5), which makes

permissible the filing of civil actions under the Privacy Act of 1974 in the United States District

Court for the District of Columbia for federal agencies such as the Department of Energy.

## IV.    JURY DEMAND

5.    Plaintiff demands a trial by jury for her claim pursuant Fed. R. Civ. P. 38 and Section 102

of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c)(1).

## V.    PARTIES

6.    Plaintiff is an employee of the Defendant as a program analyst in LM, and is a citizen of both the United States and the state of Maryland.

7.    Defendant is an agency of the United States with its headquarters in the District of Columbia.

## VI.    PRIOR ADMINISTRATIVE PROCEEDINGS AND EXHAUSTION OF REMEDIES

8.    Plaintiff filed a Request for Counseling with Defendant's Office of Civil Rights on or about August 31, 2005, concerning the matters discussed in this Complaint.

9.    Plaintiff participated in the administrative counseling process.

10.    Plaintiff's attorney notified Defendant in writing, prior to January 11, 2006, that she was Plaintiff's legal representative in this matter. The Plaintiff's attorney also provided Defendant with a designation of representative form, as signed by Plaintiff on November 30, 2005.

11.    Plaintiff's attorney also specifically notified Frank Vaccarella, Esq., in Defendant's Office of Civil Rights, both orally and in writing, prior to January 11, 2006, that she was Plaintiff's legal representative in this matter, and noted that a copy of the designation of representative form signed by Plaintiff already was on file with Defendant.

12.    In addition, Plaintiff herself informed several management officials, prior to January 11, 2006, that she was represented by attorney Cheryl Polydor, Esq.

13.    Plaintiff's attorney received her "Notice of Final Interview with EEO Counselor and Right to File a Formal Complaint of Discrimination," dated January 11, 2006, on February 22, 2006. Accordingly, Plaintiff was required to file her Formal Compliant of Discrimination on or before March 9, 2006.

14.    Plaintiff timely filed her Formal EEO Complaint with Defendant.

3

15.    Plaintiff, by her attorney, mailed her Formal EEO Complaint to Defendant on February 9, 2006, in a postage pre-paid envelope, postmarked February 9, 2006.

16.    On or about February 17, 2006, Plaintiff's Formal EEO Complaint was returned by the U.S. Postal Service to Plaintiff's attorney at her place of businesss; namely, John Berry, PLLC, 1990 M Street, NW, Suite 610, Washington, DC 20036, from which she had mailed the Complaint on February 9, 2006. The address label on the returned envelope had been removed or destroyed in the course of handling by the U.S. Postal Service.

17.    On February 17, 2006, Plaintiff's attorney again placed Plaintiff's Formal EEO Complaint in the mail, in a postage pre-paid envelope, postmarked February 17, 2006.

18.    On April 3, 2006, Plaintiff's attorney received a "Notice of Dismissal of Formal Complaint of Discrimination and Statement of Rights" sent by Defendant's Office of Civil Rights and Diversity. The "Notice" stated that Plaintiff had filed her Formal EEO Complaint on February 17, 2006, and informed Plaintiff that Defendant was dismissing it as untimely filed.

19.    As stated in Defendant's "Notice of Dismissal of Formal Compliant of Discrimination and Statement of Rights," referenced above, Plaintiff filed her Formal EEO Complaint prior to March 9, 2006. Accordingly, Defendant wrongfully dismissed Plaintiff's Formal Compliant of Discrimination on grounds that it was untimely filed.

## VII.    FACTS

20.    Plaintiff Marilyn Tolbert-Smith is, and has been since 1991, employed by the Defendant. Ms. Tolbert-Smith has worked for LM as a program analyst since its formation in December 2003.

21.    Ms. Tolbert-Smith's primary area of professional expertise and experience is information technology management.

4

22.     Currently, and at all times relevant to this Complaint, Ms. Tolbert-Smith's first-line supervisor has been Terrance Brennan. Mr. Brennan's title is Team Leader – Archives and Records Management, for LM.

23.     Currently, and at all times relevant to this Complaint, Ms. Tolbert-Smith's second-line supervisor has been Celinda Crawford. Ms. Crawford's title is Director, Business and Resource Management, for LM.

24.     Currently, and at all times relevant to this Complaint, David Geiser has been a management official in LM. His title is Acting Director, Office of Policy and Site Transition, for LM.

25.  Currently, and at all times relevant to this Complaint, Michael Owen has served as LM Director.

26.     Prior to reporting to her current supervisor, Terrance Brennan, Ms. Tolbert-Smith never received any negative comments regarding her work from any supervisor in her fifteen-plus years of service with the Department.

27.     Plaintiff has a "disability," as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12102(2), which is the definition used for discrimination complaints under the Rehabilitation Act. Her disability limits her ability to engage in certain major life activities, and results in her requiring reasonable accommodation for her disability.

28.     Specifically, Plaintiff has a mental disability in the form of clinical depression.

29.     Plaintiff is a "qualified individual with a disability" as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111(8), which is the definition used in discrimination complaints brought under the Rehabilitation Act. 29 U.S.C. § 791(g).

30.    Defendant does not claim that Plaintiff is unable to perform the essential functions of her job, with or without reasonable accommodation.

31.    Plaintiff has a history of being disabled, as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12102(2), which is the definition used for discrimination complaints under the Rehabilitation Act.

32.    Plaintiff is perceived by Defendant as being disabled, as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12102(2), which is the definition used for discrimination complaints under the Rehabilitation Act.

33.    In June, 2004, and again in July, 2004, the Plaintiff requested reasonable accommodation from LM management to accommodate her disability.

34.    LM management was aware of Plaintiff's disability at the time she requested reasonable accommodation. Management officials aware of plaintiff's disability include Terrance Brennan, Celina Crawford, David Geiser and Michael Owen.

35.    Plaintiff requested reasonable accommodation specifically in the form of reassignment to a different supervisor and/or permission to work from home and/or more flextime and/or other forms of reasonable accommodation.

36.    Neither LM management nor any other management officials employed by Defendant responded to Plaintiff's repeated requests for reasonable accommodation, first made in June and July 2004, until December 22, 2005.

37.    Defendant refuses to date to provide appropriate reasonable accommodation to Plaintiff.

38.    Defendant refuses to date to provide reassignment, or even a temporary detail to another supervisor, to Plaintiff.

39.     Defendant, and specifically LM management, has afforded other LM employees the opportunity to work from home.

40.     Defendant, and specifically LM management, has assisted other employees in securing a temporary detail and/or reassignment.

41.     Between March, 2004, and July, 2005, LM management officials subjected Plaintiff to disability-based harassment and created a hostile work environment for Plaintiff. The LM management officials responsible for conducting and/or acquiescing in this harassment, and creation of a hostile work environment include Terrance Brennan, Celina Crawford, David Geiser and Michael Owen.

42.     In or around July 2004, LM management officials, including Terrance Brennan, Celinda Crawford and Michael Owen, explicitly directed Plaintiff not to attempt make any further communications to LM Director Michael Owen regarding her disability and her need for accommodation.

43.     In or around November, 2004, LM management officials further discriminated against Plaintiff by contacting Plaintiff's physician, Dr. Prescott, without her consent, and interfering with Plaintiff's medical care. Plaintiff's direct supervisor, Terrance Brennan, specifically made an in-person visit to Dr. Prescott, without Plaintiff's prior knowledge or consent, to request information about her illness and her medical treatment.

44.     Between March, 2004 and July, 2005, LM management, particularly her direct supervisor Terrance Brennan, made comments to Plaintiff at her workplace, frequently in the presence of Plaintiff's colleagues, regarding Plaintiff's illness; her alleged inability to overcome her illness; the lack of improvement in her illness; the medical treatment she was receiving; the alleged

ineffectiveness of the medical treatment she was receiving; and other comments relating to Plaintiff's illness.

45.    Mr. Brennan, on at least one occasion at the workplace, verbally chastised Plaintiff for "not trying hard enough" to overcome her illness. Mr. Brennan on another occasion at the workplace questioned whether Plaintiff was "taking her meds." Mr. Brennan on yet another occasion at the workplace made belittling comments about the alleged lack of efficacy of Plaintiff's medical treatment for her illness, and in particular, about the alleged lack of efficacy of the medical treatment provided by her physician, Dr. Prescott. Mr. Brennan also exhorted Plaintiff's colleagues on at least one occasion at the workplace to "pray for her."

46.    The comments, e-mails and phone calls referenced above, injured and distressed Plaintiff, and caused her great stress and humiliation.

47.    The comments, e-mails and phone calls referenced above created a hostile work environment for Plaintiff.

48.    The Plaintiff's professional reputation was damaged because of the public harassment ⟩ P A which the Plaintiff faced at her workplace.

49.    In November 2004, the Plaintiff took a leave of absence from her job because of her illness.

50.    In March 2005, Plaintiff's physician, Dr. Prescott, stated in a report that the Plaintiff was able to return to work with reasonable accommodation, but LM management did not permit Plaintiff to return to work at this time.

51.    In late April 2005, Plaintiff returned to work without accommodation of any kind.

52.    The harassment and hostile work environment continued after Plaintiff's return to work in late April 2005.

8

53.     During an office retreat between July 12, 2005, and July 14, 2005, Plaintiff was subjected to coercive and humiliating verbal harassment and intimidation by her direct supervisor, Terrance Brennan.

54.     On July 19, 2005, and July 20, 2005, the harassment and hostile work environment worsened due to hostile phone calls and e-mails from LM management, specifically Terrance Brennan.

55.     The harassment and hostile work environment reached a peak on July 26, 2005, while Plaintiff was traveling to Pittsburgh for a business meeting, in a telephone discussion with Terrance Brennan. In the telephone discussion, Terrance Brennan spoke abusively and threateningly to Ms. Tolbert-Smith.

56.     The harassment from management and the hostile work environment eventually caused Plaintiff to experience a great state of stress and anxiety on July 28, 2005.

57.     Plaintiff was hospitalized on July 28, 2005, in order to deal with her illness, which had been exacerbated by the harassment and hostile work environment she was facing from LM management at the time.

58.     On or about August 31, 2005, the Plaintiff contacted Frank Vaccarella, Esq., Attorney-Advisor - EEO, in Defendant's Office of Civil Rights, and filed a Request for EEO Counseling..

59.     On September 7, 2005, LM management placed Plaintiff on enforced administrative leave.

60.     LM management placed Plaintiff on forced administrative leave based on a claim that her illness required it.

61.     LM management's claim that Plaintiff's illness required them to place her on forced administrative leave, beginning September 7, 2005, was an unfounded, pretextual justification.

In fact, LM management placed Plaintiff on forced administrative leave in retaliation for her

Plaintiff's participation in statutorily protected EEO activities just one week earlier; specifically,

her requesting counseling on or about August 31, 2005.

62.    In September 2005, the Plaintiff's physician, Dr. Prescott, reported to LM management

that Plaintiff was able to return to work with reasonable accommodation. Specifically, Dr.

Prescott reported that Plaintiff required reasonable accommodation in the form of reassignment

and flextime.

63.    However, LM management did not permit Plaintiff to return to work in September 2005.

Management refused to permit Plaintiff to return to work despite her physician's documentation

that she was able to do so, as a further act of discrimination and in retaliation for her

participation in statutorily protected EEO activities; specifically, requesting counseling on or

about August 31, 2005.

64.    In October 2005, Plaintiff filed a FOIA/ Privacy Act request for records and information

including those relating to communications between herself and members of LM management.

To date, Defendant has failed to complete its response to Plaintiff's FOIA/Privacy Act request.

Specifically, Defendant still has not provided copies to her of responsive e-mails and other

communications sent to her by Terrance Brennan and Celinda Crawford. These matertials are

necessary for Plaintiff to fully pursue her rights in the EEO complaint that is the subject of this

Complkaint.

65.    Plaintiff Marilyn Tolbert-Smith retained the legal services of the Law Firm of John

Berry, PLLC, on or about November 30, 2005.  Attorney Cheryl Polydor of the Firm undertook

Plaintiff's representation and contacted Defendant shortly thera.fter.

66.    By letter dated December 22, 2005, Defendant responded to Plaintiff's requests for reasonable accommodation for the first time, offering her the services of an EAp counselor and specifically denying her request fro reassignment.

67.    By letter dated December 22, 2005, LM management radically restructured the Plaintiff's performance standards, fundamentally changing the nature of the Plaintiff's job from information technology management, her longstanding area of professional expertise, to records management.

68.    LM management radically restructured Plaintiff's job, as described in Paragraph xx, above, as a further act of discrimination, and in retaliation for her prior EEO activity. Specifically, LM management imposed the new performance standards in an attempt to "set up" Plaintiff for failure and set the stage for unjustified and pretextual disciplinary and/or adverse action.

69.    On or about December 22, 2005, LM management intentionally and willfully placed confidential information regarding the Plaintiff's illness and medical treatment, her request for accommodation, Defendant's response to that request, and information regarding Plaintiff's FOIA request on two LM drives located on their LAN server.

70.    LM management placed the information described in paragraph xx, above, specifically on both the Y and P drives, on the Defendant's Headquarters Local Area Network. The Y drive is accessible by all of Defendant's federal employees and outside contractors , upon request.

71.    Either Celinda Crawford, or someone else with access to the workplace computer assigned by Defendant to Celinda Crawford, placed the information described above, on the server.

72.    Management officials among LM's Human Resources staff also knew of the placement of this information on the server, and did nothing to prevent or correct the unlawful disclosure.

73.    Plaintiff became aware of Defendant's placement of her confidential information on its server on or about March 31, 2006, shortly after she returned to work. She promptly reported her discovery to her LM management.

74.    In an e-mail message dated March 31, 2006, transmitted at approximately 12:08:09 pm Eastern Standard Time, Terrance Brennan responded to Plaintiff's concerns by stating in pertinent part that "I've just learned that this area of the shared drive (P) contains LM's official correspondence files. Because you expressed concern, LM will review this material and remove any official correspondence, related to yourself, that you feel may contain sensitive information. However, the use of the share [sic] drive in question is standard practice for all official LM correspondence to ensure the government maintains a record of all official business activities consistent [sic] requirements established within CFR 36, Chapter 12."

75.    Defendant's willful placement of Plaintiff's confidential information on its server constituted a further act of discrimination and retaliation against Ms. Tolbert-Smith and further contributed to the hostile work environment she faced and continues to face.

76.    In January 2006, Plaintiff's physician, Dr Prescott, again stated in a report that Plaintiff was able to return to work with reasonable accommodation. Lm management officials failed to permit Plaintiff to return to work, or to explore or offer reasonable accommodation. Defendant's unlawful conduct was a further act of discrimination, and retaliation for the Plaintiff's participation in statutorily protected EEO activities.

77.    In February 2006, Plaintiff filed a Formal EEO Complaint through her attorney, Cheryl Polydor, Esq.

78.    On or about March 28, 2006, Defendant permitted Plaintiff to return to work.

79..    Defendant has continued to request and seek reassignment since her return to work.

80.    Defendant to date has failed to provide Plaintiff with reassignment or other appropriate reasonable accommodation.

81.    The Plaintiff has complied with all requirements of the federal sector EEO process, by making a timely request for counseling, participating in counseling, and then timely filing a Formal EEO Complaint with Defendant, which Defendant wrongfully dismissed. Thus, the Plaintiff has exhausted her administrative remedies and now comes before this Court to seek relief.

## VIII.    COUNT ONE: DISABILITY DISCRIMINATION - FAILURE TO ACCOMMODATE PLAINTIFF'S DISABILITY IN VIOLATION OF THE REHABILITATION ACT

82.    Plaintiff hereby incorporates paragraphs 1-81 above by reference.

83.    Plaintiff has a mental "disability" as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. § 12102(2), which is the definition used in discrimination complaints brought under the Rehabilitation Act. 29 U.S.C. § 791(g) (2005).

84.    Plaintiff is also a "qualified individual with a disability" as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111(8), which is the definition used in discrimination complaints brought under the Rehabilitation Act. 29 U.S.C. § 791(g).

85.    Defendant had notice of both the Plaintiff's disability and the Plaintiff's request for reasonable accommodation.

86.    Defendant's refusal and continued refusal to provide reasonable accommodation for the Plaintiff's disability is in violation of the Rehabilitation Act, as amended. Id. § 791.

87.. As a direct and proximate cause of the actions set forth above, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, pain, suffering, attorney fees, medical expenses and other damages.

### IX. COUNT TWO: DISCRIMINATORY TREATMENT IN VIOLATION OF TITLE VII

88. Plaintiff hereby incorporates paragraphs 1-81 above by reference.

89. The activities described in paragraphs 1-40, above in this Complaint constitute unlawful harassment and a hostile work environment for the Plaintiff in violation of Title VII, as amended. 42 U.S.C. § 2000e, *et seq.*

90. As a direct and proximate cause of the actions set forth above, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, pain, suffering, damage to professional reputation, attorney fees and other damages.

### X. COUNT THREE: RETALIATION FOR PARTICIPATION IN EQUAL OPPORTUNITY ACTIVITY IN VIOLATION OF TITLE VII

91. Plaintiff engaged in statutorily protected EEO activities. Specifically, Plaintiff filed a request for EEO counseling on or about August 30, 2006.

92. Defendant knew that Plaintiff engaged in statutorily protected EEO activities. Moreover, LM officials Terrance Brennan and Celinda Crawford provided statements to EEO counselor Gerald Tognetti.

93. The activities described in this Complaint were instituted in violation of the prohibition on reprisals against employees that have engaged in statutorily protected EEO activities.

94. LM management officials, as described above, have retaliated against Plaintiff for engaging in statutorily protected EEO activities in violation of Title VII, as amended, 42 U.S.C. § 2000e, *et seq.*

95.    There is a direct and proximate nexus between Plaintiff's participation with the EEOC in statutorily protected activities and the Defendant's unlawful treatment of the Plaintiff.

96.    The effect of the retaliatory employment practices and actions taken by Defendant, as set forth above, has been to deprive Plaintiff of promotional opportunities, benefits and privileges, and otherwise adversely affect and alter the terms and conditions of employment for Plaintiff.

97.    As a direct and proximate cause of the actions set forth above, Plaintiff has suffered and continues to suffer damages, including, but not limited to, pain, suffering, attorney fees and other damages.

XI.    **COUNT FOUR: VIOLATION OF THE PRIVACY ACT BY POSTING PLAINTIFF'S CONFIDENTIAL RECORDS ON A WIDELY ACCESSIBLE COMPUTER SERVER.**

98.    Plaintiff hereby incorporates paragraphs 1-40 above by reference.

99.    LM management, without the consent of the Plaintiff, placed confidential records including confidential medical information, on two widely used drives on the LM server. The files on these drives are available to all of Defendant's federal employees and outside contractors with access to the Headquarters , upon request. ******

100.    Defendant violated the Privacy Act of 1974, 5 U.S.C.A. § 552a, by willfully and intentionally storing the Plaintiff's confidential medical documentation on its server and thereby intentionally making it accessible to other Agency employees and contractors.

101.    As a direct and proximate cause of the actions set forth above, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, pain, suffering, damage to professional reputation, attorney fees and other damages.

XII.  **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays that this Honorable Court grant her the following relief, namely:

1. That Defendant provide Plaintiff with reasonable accommodation, including but not limited to reassignment;

2. That Defendant provide Plaintiff with a workplace free of unlawful harassment, discrimination, retaliation or a hostile work environment;

3. That Defendant award Plaintiff back pay and front pay;

4. That Defendant award Plaintiff full "make whole" relief, including any lost pay, benefits, seniority and training opportunities resulting from management's unlawful conduct;

5. That Defendant award Plaintiff compensatory damages, including, but not limited to, reimbursement for medical and other expenses, attorneys' fees, and compensation for severe emotional suffering and stress, and damage to professional reputation and professional status and interest;

6. That Defendant award Plaintiff damages as provided in 5 U.S.C. § 552a(g)(4)(1);

7. That Defendant award Plaintiff reasonable attorney's fees and costs under Title VII, 42 U.S.C. § 2000e-5(k) and as otherwise provided under law; and

8. Any and all other forms of relief which this Court deems just.

Respectfully submitted,

Cheryl Polydor, Esq.
DC Bar Id #: 454066
John Berry, PLLC
1990 M Street, NW
Suite 610
Washington, DC 20036

(202) 955-1100
Fax: (202) 955-1101
<u>Attorney for Plaintiff</u>

Dated: July 3, 2006

AO 440 (Rev. DC - September 2003) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## District of Columbia

Marilyn Tolbert-Smith

**SUMMONS IN A CIVIL CASE**

V.

Samuel Bodman, Secretary,
U.S. Department of Energy

CASE NUMBER    1:06CV01216

JUDGE: Richard W. Roberts

DECK TYPE: Employment Discrimination

DATE STAMP: 07/05/2006

TO: (Name and address of Defendant)

Alberto R. Gonzales
U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Cheryl Polydor, Esq.
1990 M Street, N.W.
Suite 610
Washington, D.C. 20036

an answer to the complaint which is served on you with this summons, within _____ 60 _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this
Court within a reasonable period of time after service.

NANCY M. MAYER-WHITTINGTON                    JUL - 3 2006

CLERK                                          DATE

(By) DEPUTY CLERK

Exhibit _3_

AO 440 (Rev. DC - September 2003) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

_____

_____

☐ Other (specify): _____

_____

_____

### STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
           Date                Signature of Server

_____
Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

Rev. 4/06

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA


# INITIAL ELECTRONIC CASE FILING
# ·ORDER


Subsequent filings in this case must be made electronically using the Court's Electronic Case Filing System (ECF) pursuant to Local Rule 5.4.

ORDERED that counsel shall:

- Submit in paper, the original and copy of the complaint/notice of removal/petitions for habeas corpus and any accompanying papers (**not including summons and civil cover sheets**). Additionally, litigants are hereby required to provide those filings in PDF Format on a floppy disk or CD-Rom compact disk. The disk should be clearly labeled with the case number (if known) and the name of the parties. If unable to deliver the filing on a disk at the time of the new case filing, counsel should e-mail the initiating document and accompanying papers to dcd_cmecf@dcd.uscourts.gov by the close of business the day the new case was filed. Failure to supply electronic copies of the new case in a timely manner, will result in the attorney's name being added to the attorney non-compliant list and shared with the Court's ECF Judge's Committee. **Regardless of what option counsel chooses, the complaint/notice** of removal and accompanying papers must come to the Court as PDF documents. Each exhibit to the new case shall be in a separate PDF file. Failure to submit PDF versions of the complaint/notice of removal and other documents will delay the opening of the case in ECF.

- Register, if not previously registered, to become an electronic filer by completing and returning the enclosed ECF Registration Form found on the Court's Website at (www.dcd.uscourts.gov). The login and password are case specific and can be used for all cases.

- Make all subsequent filings electronically. This is <u>mandatory</u>.

- Have a PACER (Public Access to Court Electronic Records) account, in order to view dockets and documents. Call 1-800-676-6856 or visit www.pacer.psc.uscourts.gov for additional information.

- Schedule a training class at the Courthouse by going to the Court's ECF Internet Website (www.dcd.uscourts.gov/ecf.html). Also, filing instructions and an interactive tutorial can be found at this Internet Website.


## ROBERTS, J. RWR
_____

UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

### ELECTRONIC CASE FILES
### Attorney/Participant Registration Form

## LIVE SYSTEM

This form shall be used to register for an account on the Court's Electronic Case Files (ECF) system and to subscribe to the ECF EMail (Listserver) notification service. Registered attorneys and other participants will have privileges both to electronically submit documents, and to view and retrieve electronic docket sheets and documents for all cases assigned to the Electronic Case Files system. Listserver subscribers receive email messages whenever the Court wishes to electronically notify ECF registrants of pertinent ECF information.

The following information is required for registration:

If you are appointed pro bono or pro hac vice, please provide the case number: _____

First Name/Middle Initial/Last Name _____ ____ _____

Last four digits of Social Security Number _____

DC Bar ID#:  _____

Firm Name  _____

Firm Address  _____
_____
_____

Voice Phone Number  _____

FAX Phone Number  _____

Internet E-Mail Address  _____

By submitting this registration form, the undersigned agrees to abide by the following rules:

1.   This system is for use only in cases permitted by the *U.S. District Court for the District of Columbia.* It may be used to file and view electronic documents, docket sheets, and notices. Please visit the Court's ECF Internet, www.dcd.uscourts.gov, website to schedule training.

2.   Pursuant to Federal Rule of Civil Procedure 11, every pleading, motion, and other paper (except list, schedules, statements or amendments thereto) shall be signed by at least one attorney of record or, if the party is not represented by an attorney, all papers shall be signed by the party. An attorney's/participant's password issued by the court combined with the user's identification, serves as and constitutes the attorney's/participant's signature. Therefore, an attorney/participant must protect and secure the password issued by the court.

If there is any reason to suspect the password has been compromised in any way, it is the duty and responsibility of the attorney/participant to immediately notify the court. This should include the resignation or reassignment of the person with authority to use the password. The Court will immediately delete that password from the electronic filing system and issue a new password.

3.    An attorney's/participant's registration will not waive conventional service of a summons and complaint, subpoena, or other judicial process; submit the client to the jurisdiction of the Court; or operate as a consent to accept service of pleadings, documents, and orders in actions in which such attorney/participant has not entered an appearance.    An attorney's/participant's registration will constitute a waiver in law only of conventional service of other non-process pleadings, documents, and orders in the case.    The attorney/participant agrees to accept, on behalf of the client, service of notice of the electronic filing by hand, facsimile or authorized e-mail.

4.    Upon receipt of your login and password, you are strongly encouraged to change your password, which may be done through the Utilities function, to a name easily recalled. **You may be subjected to a fee, should the Clerk's Office have to create a new password for you, or alternatively, you may be required to appear in person to receive your new password.**

5.    Attorneys who are active members of the bar of this Court, or government attorneys who are employed or retained by the United States, or who have been permitted to proceed *pro hac vice*, must file pleadings electronically.

Please return this form to:              U.S. District Court for the District of Columbia
                                          Attn:   Attorney Admissions
                                          333 Constitution Avenue NW, Room 1825
                                          Washington, DC  20001

Or FAX to:                                Peggy Trainum
                                          U.S. District Court for the District of Columbia
                                          (202) 354-3023

Applicant's Signature    _____

_____    _____    _____
Full Last Name         Initial of         Last 4 Digits SS#
                       First Name

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Nancy M. Mayer-Whittington
Clerk

## NOTICE OF RIGHT TO CONSENT TO TRIAL
## BEFORE UNITED STATES MAGISTRATE JUDGE

The substantial criminal caseload in this Court and the requirements of the criminal Speedy Trial Act frequently result in a delay in the trial of civil cases. Aware of the hardship and expense to the parties, counsel, and witnesses caused by the delays which are beyond the control of the Court, this notice is to advise you of your right to a trial of your case by a United States Magistrate Judge. By statute, 28 U.S.C. § 636(c), Fed.R.Civ.P.73 and Local Rule 502, the parties, by consent, can try their case by means of a jury trial or bench trial before a United States Magistrate Judge. Appeals from judgments and final orders are taken directly to the United States Court of Appeals for the District of Columbia Circuit, in the same manner as an appeal from a judgment of a District Judge in a civil case.

### WHAT IS THE PROCEDURE?

One of the matters you are required to discuss at the meet-and-confer conference mandated by Local Rule 206 is whether the case should be assigned to a United States Magistrate Judge for all purposes, including trial.

All parties must consent before the case is assigned to a Magistrate Judge for trial. You may consent at any time prior to trial. If you expressly decline to consent or simply fail to consent early in the case, you are not foreclosed from consenting later in the case. However, a prompt election to proceed before a Magistrate Judge is encouraged because it will facilitate a more orderly scheduling of the case.

Attached is a copy of the "Consent to Proceed Before a United States Magistrate Judge for All Purposes" form. Your response should be made to the Clerk of the United States District Court only.

### WHAT IS THE ADVANTAGE?

The case will be resolved sooner and less expensively. The earlier the parties consent to assigning the case to a Magistrate Judge the earlier a firm and certain trial date can be established, even if the case is to be tried to a jury.

Upon the filing of the consent form and with the approval of the District Judge, the case will be assigned for all purposes to a Magistrate Judge.

CO-942A
Rev 3/95
Rev 7/99

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Marilyn Tolbert-Smith, <br> 12529 Covenant Way <br> Hagerstown, MD 21742 <br><br> Plaintiff, <br><br> v. <br><br> Samuel Bodman, <br> Secretary <br> U.S. Department of Energy <br> 1000 Independence Avenue, S.W. <br> Washington, D.C., 20585 <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. _____ <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

### I.    INTRODUCTION

Plaintiff Marilyn Tolbert-Smith ("Plaintiff" or "Ms. Tolbert-Smith") brings this

Complaint against the United States Department of Energy ("Defendant" or "Department"), for

violations of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 ("Rehabilitation

Act"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII");

and the Privacy Act of 1974, 5 U.S.C.A. § 552a. These violations arise from the Defendant's

failure to reasonably accommodate Plaintiff's disability; Defendant's discriminatory treatment of

Plaintiff, including disability-based harassment and a hostile work environment created by

management officials in the Defendant's Office of Legacy Management ("LM") and other

offices; Defendant's reprisal for Plaintiff's prior participation in statutorily protected Equal

Employment Opportunity ("EEO") activities; and Defendant's willful and unlawful disclosure of

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Marilyn Tolbert-Smith, <br> 12529 Covenant Way <br> Hagerstown, MD 21742 <br><br>        Plaintiff, <br><br>      v. <br><br> Samuel Bodman, <br> Secretary <br> U.S. Department of Energy <br> 1000 Independence Avenue, S.W. <br> Washington, D.C., 20585 <br><br>        Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    Civil Action No. 06cv1216 <br> )    Judge Richard W. Roberts <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## PLAINTIFF'S STATEMENT OF GENUINE ISSUES

Pursuant to Local Civil Rules ("LCvR") 7(h) and 56.1, Plaintiff Marilyn Tolbert-Smith ("Tolbert-Smith" or "Plaintiff") submits the following Statement of Genuine Issues in response to Defendant's Statement of Material Facts Not in Genuine Dispute, filed October 6, 2006.

Specific responses and objections are presented below in numbered paragraphs tracking the numbering scheme in Defendant's Statement.

1.    Plaintiff does not dispute that she is an employee of the Defendant as a program analyst with the Department of Energy, Office of Legacy Management.

2.    Plaintiff does not dispute that she filed a Request for Counseling with the Office of Civil Rights ("OCR").

3.    Plaintiff does not dispute that on January 11, 2006, Defendant's Office of Civil Rights("OCR")issued a Notice of Final Interview with EEO Counselor and Right to

File a Formal Complaint of Discrimination ("Notice of Final Interview and Rights"), which explained that a formal complaint of discrimination must be filed within 15 calendar days after receipt of the Notice.

4.    Plaintiff does not dispute that the Notice of Final Interview and Rights was sent to her, return receipt requested, and that she received it on January 25, 2006.

5.    Plaintiff does not dispute that her attorney mailed her Formal EEO Complaint to the OCR on February 17, 2006.  However, Plaintiff's attorney had previously mailed it to OCR, on February 9, 2006, but it was returned to her office because the address label on the returned envelope had been removed or destroyed in the course of handling by the U.S. Postal Service.  Complaint at ¶ 16; Plaintiff's Exhibit 1.

6.    Plaintiff does not dispute that the OCR sent a Notice of Dismissal of Formal Complaint of Discrimination to Plaintiff's counsel on March 29, 2006.

7.    Plaintiff does not dispute that the Notice of Dismissal informed her that she must file a Notice of Appeal within 30 calendar days after receipt of the Final Order if she wished to appeal to the EEOC.  Plaintiff also does not dispute that the Notice informed that if she wanted to file a civil action, she must file within 90 days of receipt of the Final Order, if no appeal is filed, or may file within 180 calendar days from the date of filing an appeal with the EEOC if no final decision on the appeal has been made by the EEOC.

8.    Plaintiff does not dispute that the Notice of Dismissal was received by counsel on April 3, 2006.

9.    Plaintiff does not dispute that Plaintiff did not file an appeal with the EEOC; accordingly, Plaintiff's civil action was to be filed on or before July 3, 2006.

2

10.    Plaintiff objects to this paragraph because Plaintiff filed the present action on July 3, 2006.  Plaintiff's Exhibits 2 and 3.

11.    Plaintiff does not dispute that Plaintiff became aware of Defendant's placement of her confidential information on its server on or about March 31, 2006, and she reported her discovery to her LM management.

12.    This paragraph is not supported by citation in violation of LcVR 7(h).  Absent any evidentiary support, the allegations in this paragraph cannot be evaluated or properly considered as part of a statement of facts.  See LCvR 7(h) (statement of material facts "shall include references to the parts of the record relied on to support the statement").

13.    This paragraph is not supported by citation in violation of LcVR 7(h).  Absent any evidentiary support, the allegations in this paragraph cannot be evaluated or properly considered as part of a statement of facts.  See LCvR 7(h) (statement of material facts "shall include references to the parts of the record relied on to support the statement").

14.    This paragraph is not supported by citation in violation of LcVR 7(h).  Absent any evidentiary support, the allegations in this paragraph cannot be evaluated or properly considered as part of a statement of facts.  See LCvR 7(h) (statement of material facts "shall include references to the parts of the record relied on to support the statement").

Respectfully submitted,

Cheryl Polydor, Esq.
DC Bar Id #: 454066
John Berry, PLLC
1990 M Street, NW
Suite 610
Washington, DC 20036
(202) 955-1100
Fax: (202) 955-1101
<u>Attorney for Plaintiff</u>

Dated: October 25, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Marilyn Tolbert-Smith,<br>12529 Covenant Way<br>Hagerstown, MD 21742<br><br>      Plaintiff,<br><br>      v.<br><br>Samuel Bodman,<br>Secretary<br>U.S. Department of Energy<br>1000 Independence Avenue, S.W.<br>Washington, D.C., 20585<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      Civil Action No. 06cv1216 (RWR)<br>     Judge Richard W. Roberts |

**ORDER**

Upon consideration of Plaintiff's Motion to Strike Defendant's Motion to Dismiss, Or in

the Alternative, For Summary Judgment, the Court hereby

ORDERS that Plaintiff's Motion is granted.

_____
The Honorable Richard W. Roberts
United States District Court Judge

Date: _____

3