## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Marilyn Tolbert-Smith,                )
12529 Covenant Way                    )
Hagerstown, MD 21742                  )
                                      )
          Plaintiff,                  )
                                      )
     v.                               )          Civil Action No. 1-06CV01216
                                      )          Judge Richard W. Roberts
Samuel Bodman,                        )
Secretary                             )
U.S. Department of Energy             )
1000 Independence Avenue, S.W.        )
Washington, D.C., 20585               )
                                      )
          Defendant.                  )
                                      )

## FIRST AMENDED COMPLAINT

### I.    INTRODUCTION

Plaintiff Marilyn Tolbert-Smith ("Plaintiff" or "Ms. Tolbert-Smith") brings this

Complaint against the United States Department of Energy ("Defendant" or "Department"), for

violations of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 ("Rehabilitation

Act"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII");

and the Privacy Act of 1974, 5 U.S.C.A. § 552a.  These violations arise from the Defendant's

failure to reasonably accommodate Plaintiff's disability; Defendant's discriminatory treatment of

Plaintiff, including disability-based harassment and a hostile work environment created by

management officials in the Defendant's Office of Legacy Management ("LM") and other

offices; Defendant's reprisal for Plaintiff's prior participation in statutorily protected Equal

Employment Opportunity ("EEO") activities, including the recent imposition of baseless and

unauthorized Counseling Memoranda; and Defendant's willful and unlawful disclosure of confidential information relating to Plaintiff's reasonable accommodation request, and medical diagnosis and treatment, without her consent.

## II.    JURISDICTION

1.      This action is authorized pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791; and the Privacy Act of 1974, 5 U.S.C.A. § 552a.

2.      Jurisdiction of this court over the Title VII and Rehabilitation Act claims is founded upon 28 U.S.C. §§ 1331 and 1343.

3.      Jurisdiction of this court over the Privacy Act claim is founded upon 5 U.S.C. §§ 552a(g)(1)(D), because Defendant improperly and illegally disclosed confidential information about Plaintiff without her consent from its records.

## III.    VENUE

4.      Venue is proper in this court pursuant to 42 U.S.C. § 2000e(5)(f)(3).  Venue is proper in the District of Columbia because the "employment records relevant" to the unlawful employment practice alleged in this case "are maintained and administered" in the District of Columbia.  The Defendant also has its principal office, or headquarters, in the District of Columbia.

5.      Venue is also proper in this Court pursuant to 5 U.S.C. § 552a(g)(5), which makes permissible the filing of civil actions under the Privacy Act of 1974 in the United States District Court for the District of Columbia for federal agencies such as the Department of Energy.

## IV.    JURY DEMAND

6.      Plaintiff demands a trial by jury for her claim pursuant Fed. R. Civ. P. 38 and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c)(1).

## V.    PARTIES

7.      Plaintiff is an employee of the Defendant as a program analyst in LM, and is a citizen of both the United States and the state of Maryland.

8.      Defendant is an agency of the United States with its headquarters in the District of Columbia.

## VI.    PRIOR ADMINISTRATIVE PROCEEDINGS AND EXHAUSTION OF REMEDIES

9.      Plaintiff filed a Request for Counseling with Defendant's Office of Civil Rights on or about August 31, 2005, concerning the matters discussed in this Complaint.

10.     Plaintiff participated in the administrative counseling process.

11.     Plaintiff's attorney notified Defendant in writing, prior to January 11, 2006, that she was Plaintiff's legal representative in this matter.  The Plaintiff's attorney also provided Defendant with a designation of representative form, as signed by Plaintiff on November 30, 2005.

12.     Plaintiff's attorney also specifically notified Frank Vaccarella, Esq., in Defendant's Office of Civil Rights, both orally and in writing, prior to January 11, 2006, that she was Plaintiff's legal representative in this matter, and noted that a copy of the designation of representative form signed by Plaintiff already was on file with Defendant.

13.     In addition, Plaintiff herself informed several management officials, prior to January 11, 2006, that she was represented by attorney Cheryl Polydor, Esq.

14.     Plaintiff's attorney received her "Notice of Final Interview with EEO Counselor and Right to File a Formal Complaint of Discrimination," dated January 11, 2006, on February 22, 2006.  Accordingly, Plaintiff was required to file her Formal Compliant of Discrimination on or before March 9, 2006.

15.    Plaintiff timely filed her Formal EEO Complaint with Defendant.

16.    Plaintiff, by her attorney, mailed her Formal EEO Complaint to Defendant on February 9,

2006, in a postage pre-paid envelope, postmarked February 9, 2006.

17.    On or about February 17, 2006, Plaintiff's Formal EEO Complaint was returned by the

U.S. Postal Service to Plaintiff's attorney at her place of business; namely, John Berry, PLLC,

1990 M Street, NW, Suite 610, Washington, DC 20036, from which she had mailed the

Complaint on February 9, 2006. The address label on the returned envelope had been removed

or destroyed in the course of handling by the U.S. Postal Service.

18.    On February 17, 2006, Plaintiff's attorney again placed Plaintiff's Formal EEO

Complaint in the mail, in a postage pre-paid envelope, postmarked February 17, 2006.

19.    On April 3, 2006, Plaintiff's attorney received a "Notice of Dismissal of Formal

Complaint of Discrimination and Statement of Rights" sent by Defendant's Office of Civil

Rights and Diversity. The "Notice" stated that Plaintiff had filed her Formal EEO Complaint on

February 17, 2006, and informed Plaintiff that Defendant was dismissing it as untimely filed.

20.    As stated in Defendant's "Notice of Dismissal of Formal Compliant of Discrimination

and Statement of Rights," referenced above, Plaintiff filed her Formal EEO Complaint prior to

March 9, 2006. Accordingly, Defendant wrongfully dismissed Plaintiff's Formal Compliant of

Discrimination on grounds that it was untimely filed.

21.    On July 7 and July 18, 2006, Plaintiff filed her second and third Formal EEO Complaints

due to the continued discriminatory and retaliatory actions against Plaintiff

22.    On August 28, 2006, Plaintiff's attorney received a "Notice of Dismissal of Complaint of

Discrimination" sent by Defendant's Office of Civil Rights and Diversity. The "Notice"

informed Plaintiff that Defendant was dismissing them because Plaintiff filed a civil complaint

raising the same matter or issues that Plaintiff alleged in her EEO Complaints and that Plaintiff

has the right to file a civil action if Plaintiff elects not to appeal to the EEOC.

## VII.   FACTS

23.    Plaintiff Marilyn Tolbert-Smith is, and has been since 1991, employed by the Defendant.

Ms. Tolbert-Smith has worked for LM as a program analyst since its formation in December

2003.

24.    Ms. Tolbert-Smith's primary area of professional expertise and experience is information

technology management.

25.    Prior to an office reorganization effected on or around June 11, 2006, Ms. Tolbert-

Smith's first-line supervisor was Terrance Brennan. Mr. Brennan is a Team Leader in LM.

Notwithstanding this reorganization, Mr. Brennan has continued to perform an unauthorized,

supervisory role in connection with Ms. Tolbert-Smith, which has been acknowledged by David

Geiser and other Department officials in recent discussions with Ms. Tolbert-Smith. Mr.

Brennan's actions in this regard have greatly increased the severity of the hostile work

environment Ms. Tolbert-Smith faces on the job.

26.    Since the reorganization, Ms. Tolbert-Smith's second-line supervisor has been Celinda

Crawford. Ms. Crawford's title is Director, Business and Resource Management, for LM.

27.    Currently, and at all times relevant to this Complaint, David Geiser has been a

management official in LM. His title is Acting Director, Office of Policy and Site Transition, for

LM.

28.    Currently, and at all times relevant to this Complaint, Michael Owen has served as LM

Director.

29.    Prior to reporting to Terrance Brennan, Ms. Tolbert-Smith never received any disciplinary or adverse action, or negative comments, including Letters of Counseling, regarding her work from any supervisor in her fifteen-plus years of service with the Department.

30.    Plaintiff has a "disability," as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12102(2), which is the definition used for discrimination complaints under the Rehabilitation Act. Her disability limits her ability to engage in certain major life activities, and results in her requiring reasonable accommodation for her disability.

31.    Specifically, Plaintiff has a mental disability in the form of clinical depression.

32.    Plaintiff is a "qualified individual with a disability" as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111(8), which is the definition used in discrimination complaints brought under the Rehabilitation Act. 29 U.S.C. § 791(g).

33.    Defendant does not claim that Plaintiff is unable to perform the essential functions of her job, with or without reasonable accommodation.

34.    Plaintiff has a history of being disabled, as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12102(2), which is the definition used for discrimination complaints under the Rehabilitation Act.

35.    Plaintiff is perceived by Defendant as being disabled, as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12102(2), which is the definition used for discrimination complaints under the Rehabilitation Act.

36.    Plaintiff has repeatedly requested reasonable accommodation from LM management to accommodate her disability, beginning in June and July of 2004.

37.    LM management was aware of Plaintiff's disability at the time she requested reasonable

accommodation.  Management officials aware of plaintiff's disability include Terrance Brennan,

Celina Crawford, David Geiser and Michael Owen.

38.    Plaintiff requested reasonable accommodation specifically in the form of reassignment to

a different supervisor and/or permission to work from home and/or more flextime and/or other

forms of reasonable accommodation.

39.    Neither LM management nor any other management officials employed by Defendant

responded to Plaintiff's repeated requests for reasonable accommodation, first made in June and

July 2004, until May 19, 2006.

40.    Defendant refuses to date to provide appropriate reasonable accommodation to Plaintiff.

41.    Defendant refuses to date to provide reassignment, or even a temporary detail to another

supervisor, to Plaintiff. Defendant has thwarted Plaintiff in her own attempts to secure a , transfer

or reassignment.

42.    Defendant, and specifically LM management, has afforded other LM employees the

opportunity to work from home.

43.    Defendant, and specifically LM management, has assisted other employees in securing a

temporary detail and/or reassignment.

44.    Between March, 2004, and July, 2005, LM management officials subjected Plaintiff to

disability-based harassment and created a hostile work environment for Plaintiff.  The LM

management officials responsible for conducting and/or acquiescing in this harassment, and

creation of a hostile work environment include Terrance Brennan, Celina Crawford, David

Geiser and Michael Owen.

45.    In or around July 2004, LM management officials, including Terrance Brennan, Celinda Crawford and Michael Owen, explicitly directed Plaintiff not to attempt to make any further communications to LM Director Michael Owen regarding her disability and her need for accommodation.

46.    In or around November, 2004, LM management officials further discriminated against Plaintiff by contacting Plaintiff's physician, Dr. Prescott, without her consent, and interfering with Plaintiff's medical care. Plaintiff's direct supervisor, Terrance Brennan, specifically made an in-person visit to Dr. Prescott, without Plaintiff's prior knowledge or consent, to request information about her illness and her medical treatment.

47.    Between March, 2004 and July, 2005, LM management, particularly her direct supervisor Terrance Brennan, made comments to Plaintiff at her workplace, frequently in the presence of Plaintiff's colleagues, regarding Plaintiff's illness; her alleged inability to overcome her illness; the lack of improvement in her illness; the medical treatment she was receiving; the alleged ineffectiveness of the medical treatment she was receiving; and other comments relating to Plaintiff's illness.

48.    Mr. Brennan, on at least one occasion at the workplace, verbally chastised Plaintiff for "not trying hard enough" to overcome her illness. Mr. Brennan on another occasion at the workplace questioned whether Plaintiff was "taking her meds." Mr. Brennan on yet another occasion at the workplace made belittling comments about the alleged lack of efficacy of Plaintiff's medical treatment for her illness, and in particular, about the alleged lack of efficacy of the medical treatment provided by her physician, Dr. Prescott. Mr. Brennan also exhorted Plaintiff's colleagues on at least one occasion at the workplace to "pray for her."

49.     The comments, e-mails and phone calls referenced above, injured and distressed Plaintiff, and caused her great stress and humiliation.

50.     The comments, e-mails and phone calls referenced above created a hostile work environment for Plaintiff.

51.     The Plaintiff's professional reputation was damaged because of the public harassment which the Plaintiff faced at her workplace.

52.     In November 2004, the Plaintiff took a leave of absence from her job because of her illness. Plaintiff has required additional time away from her job due to her illness.

53.     In March 2005, Plaintiff's physician, Dr. Prescott, stated in a report that the Plaintiff was able to return to work with reasonable accommodation, but LM management did not permit Plaintiff to return to work at this time.

54.     In late April 2005, Plaintiff returned to work without accommodation of any kind.

55.     The harassment and hostile work environment continued after Plaintiff's return to work in late April 2005.

56.     During an office retreat between July 12, 2005, and July 14, 2005, Plaintiff was subjected to coercive and humiliating verbal harassment and intimidation by her direct supervisor, Terrance Brennan.

57.     On July 19, 2005, and July 20, 2005, the harassment and hostile work environment worsened due to hostile phone calls and e-mails from LM management, specifically Terrance Brennan.

58.     The harassment and hostile work environment reached a peak on July 26, 2005, while Plaintiff was traveling to Pittsburgh for a business meeting, in a telephone discussion with

Terrance Brennan. In the telephone discussion, Terrance Brennan spoke abusively and threateningly to Ms. Tolbert-Smith.

59.    The harassment from management and the hostile work environment eventually caused Plaintiff to experience a great state of stress and anxiety on July 28, 2005.

60.    Plaintiff was hospitalized on July 28, 2005, in order to deal with her illness, which had been exacerbated by the harassment and hostile work environment she was facing from LM management at the time.

61.    On or about August 31, 2005, the Plaintiff contacted Frank Vaccarella, Esq., Attorney-Advisor - EEO, in Defendant's Office of Civil Rights, and filed a Request for EEO Counseling.

62.    On September 7, 2005, LM management placed Plaintiff on enforced administrative leave.

63.    LM management placed Plaintiff on forced administrative leave based on a claim that her illness required it.

64.    LM management's claim that Plaintiff's illness required them to place her on forced administrative leave, beginning September 7, 2005, was an unfounded, pretextual justification. In fact, LM management placed Plaintiff on forced administrative leave in retaliation for her Plaintiff's participation in statutorily protected EEO activities just one week earlier; specifically, her requesting counseling on or about August 31, 2005.

65.    In September 2005, the Plaintiff's physician, Dr. Prescott, reported to LM management that Plaintiff was able to return to work with reasonable accommodation. Specifically, Dr. Prescott reported that Plaintiff required reasonable accommodation in the form of reassignment and flextime.

66.    However, LM management did not permit Plaintiff to return to work in September 2005.
Management refused to permit Plaintiff to return to work despite her physician's documentation
that she was able to do so, as a further act of discrimination and in retaliation for her
participation in statutorily protected EEO activities; specifically, requesting counseling on or
about August 31, 2005.

67.    In October 2005, Plaintiff filed a FOIA/ Privacy Act request for records and information
including those relating to communications between herself and members of LM management.
To date, Defendant has failed to complete its response to Plaintiff's FOIA/Privacy Act request.
Specifically, Defendant still has not provided copies to her of responsive e-mails and other
communications sent to her by Terrance Brennan and Celinda Crawford. These materials are
necessary for Plaintiff to fully pursue her rights in the EEO complaint that is the subject of this
Complaint.

68.    Plaintiff Marilyn Tolbert-Smith retained the legal services of the Law Firm of John
Berry, PLLC, on or about November 30, 2005. Attorney Cheryl Polydor of the Firm undertook
Plaintiff's representation and contacted Defendant shortly thereafter.

69.    By letter dated December 22, 2005, Defendant responded to Plaintiff's requests for
reasonable accommodation for the first time, offering her the services of the Employment
Assistance Program ("EAP") counselor and specifically denying her request for reassignment.

70.    By letter dated December 22, 2005, LM management radically restructured the Plaintiff's
performance standards, fundamentally changing the nature of the Plaintiff's job from information
technology management, her longstanding area of professional expertise, to records
management.

71.    LM management radically restructured Plaintiff's job, as described above, as a further act of discrimination, and in retaliation for her prior EEO activity. Specifically, LM management imposed the new performance standards in an attempt to "set up" Plaintiff for failure and set the stage for unjustified and pretextual disciplinary and/or adverse action.

72.    On or about December 22, 2005, LM management intentionally and willfully placed confidential information regarding the Plaintiff's illness and medical treatment, her request for accommodation, Defendant's response to that request, and information regarding Plaintiff's FOIA request on two LM drives located on their LAN server.

73.    LM management placed the information described in paragraph 72, above, specifically on both the Y and P drives, on the Defendant's Headquarters Local Area Network. The Y drive is accessible by all of Defendant's federal employees and outside contractors, upon request.

74.    Either Celinda Crawford, or someone else with access to the workplace computer assigned by Defendant to Celinda Crawford, placed the information described above, on the server.

75.    Management officials among LM's Human Resources staff also knew of the placement of this information on the server, and did nothing to prevent or correct the unlawful disclosure.

76.    Plaintiff became aware of Defendant's placement of her confidential information on its server on or about March 31, 2006, shortly after she returned to work. She promptly reported her discovery to her LM management.

77.    In an e-mail message dated March 31, 2006, transmitted at approximately 12:08:09 pm Eastern Standard Time, Terrance Brennan responded to Plaintiff's concerns by stating in pertinent part that "I've just learned that this area of the shared drive (P) contains LM's official correspondence files. Because you expressed concern, LM will review this material and remove

any official correspondence, related to yourself, that you feel may contain sensitive information. However, the use of the share [sic] drive in question is standard practice for all official LM correspondence to ensure the government maintains a record of all official business activities consistent [sic] requirements established within CFR 36, Chapter 12."

78.    Defendant's willful placement of Plaintiff's confidential information on its server constituted a further act of discrimination and retaliation against Ms. Tolbert-Smith, and further contributed to the hostile work environment she faced and continues to face.

79.    In January 2006, Plaintiff's physician, Dr Prescott, again stated in a report that Plaintiff was able to return to work with reasonable accommodation. LM management officials failed to permit Plaintiff to return to work, or to explore or offer reasonable accommodation. Defendant's unlawful conduct was a further act of discrimination, and retaliation for the Plaintiff's participation in statutorily protected EEO activities.

80.    In February 2006, Plaintiff filed a Formal EEO Complaint through her attorney, Cheryl Polydor, Esq.

81.    On or about March 28, 2006, Defendant permitted Plaintiff to return to work.

82.    On or about March 29, 2006, only a day following Plaintiff's return to work, Terry Brennan, her direct supervisor, told Plaintiff that he had "no need" for anyone to do "information records management" or IT management work, and added that if that is what she wanted to do, then he "didn't have a job for her."

83.    Moreover, the LM Office had posted an opening for a specialist in this area, and Plaintiff's managers, including Mr. Brennan, were in the process of reviewing applicant resumes at the time Mr. Brennan made the above remarks.

84.    On April 25, 2006, Terry Brennan e-mailed Plaintiff to inform her that LM management was denying her request for a temporary detail to the I-Manage Project Team. Plaintiff had purposely sought the detail in an attempt to remove herself from the hostile work environment that Mr. Brennan and other LM managers created.

85.    On or about April 27, 2006, during a discussion regarding her recent requests for professional, job-related training, Terry Brennan asked Plaintiff: "How can I judge whether you can interact appropriately with your peers?" Mr. Brennan's painfully patronizing statement illustrates precisely the kind of stereotypical attitude and treatment of people with disabilities, particularly those with mental illness, that the Rehabilitation Act is designed to remedy.

86.    By letter dated July 7, 2006, Celinda Crawford responded to Plaintiff's renewed request for reasonable accommodation, as presented by her attorney in a letter dated May 19, 2006. However, the letter consisted of a number of incorrect statements.

87.    While Plaintiff's physician, Dr Prescott, wrote in his June 23rd letter that "these [same] recommendations were made in a document authored by myself... in September 2005," and Plaintiff be accommodated with "a different supervisory structure" and "the opportunity to work in a venue closer to her home or on a more intensive flexi-place basis," the letter claimed that the doctor's June 23rd letter "appears to contradict his previous determination that [Plaintiff] can perform the duties we have assigned in a normal office environment."

88.    The letter also claimed that "LM has offered to reassign Ms. Tolbert-Smith to Morgantown, West Virginia," but no such offer had been presented to Plaintiff or Plaintiff's attorney. Moreover, this would not represent an acceptable accommodation, particularly since it failed to address the need for a change in Plaintiff's supervisory structure.

89.    The letter also claimed that Plaintiff's longstanding request for reassignment was limited only within LM and asserted that "no vacant positions have become available *within the organization* at the appropriate grade level." However, Plaintiff had given her managers no reason to believe that she limited her request for reassignment to LM. Further, her managers were required as a matter of law to consider reassignment options throughout the Agency.

90.    On July 7, 12 and 20, 2006, Mr. Brennan and other management officials continued a series of retaliatory and discriminatory actions. Mr. Brennan on at least one occasion made a reference to Ms. Tolbert-Smith's "attorney" in an intimidating and threatening manner.

91.    Mr. Brennan has engaged in a pattern of harassing and intimidating behavior in connection with Plaintiff's Workers' Compensation claim.

92.    Mr. Brennan and Ms. Crawford in particular have prepared, and imposed on Plaintiff, discriminatory and retaliatory Letters of Counseling lacking any foundation or legitimate basis, and have otherwise subjected, and continue to subject, Ms. Tolbert-Smith to a hostile work environment.

93.    Defendant's investigation of , and failure to take proper action on, Ms. Tolbert-Smith's concerns about her personal safety in connection with Mr. Brennan, have further contributed to the creation and maintenance of a hostile work environment for Plaintiff. This is reflected in the Report of Investigation prepared by Raj Gupta for LM management.

94.    Plaintiff has continued to request and seek reassignment since her return to work.

95.    Defendant to date has failed to provide Plaintiff with reassignment or other appropriate reasonable accommodation, and continues to subject her to a hostile work environment.

96.    Plaintiff hereby incorporates all of the allegations in her Formal EEO Complaints.

97.    Plaintiff has complied with all requirements of the federal sector EEO process, by making a timely request for counseling, participating in counseling, and then timely filing a Formal EEO Complaint with Defendant, which Defendant wrongfully dismissed. Plaintiff's additional Formal EEO Complaints were also dismissed, and Plaintiff was given the right to file a civil action if Plaintiff elects not to appeal to the EEOC. Plaintiff did not appeal to the EEOC. Thus, Plaintiff has exhausted her administrative remedies and now comes before this Court to seek relief.

### VIII.   COUNT ONE: DISABILITY DISCRIMINATION - FAILURE TO ACCOMMODATE PLAINTIFF'S DISABILITY IN VIOLATION OF THE REHABILITATION ACT

98.    Plaintiff hereby incorporates paragraphs 1-97 above by reference.

99.    Plaintiff has a mental "disability" as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. § 12102(2), which is the definition used in discrimination complaints brought under the Rehabilitation Act. 29 U.S.C. § 791(g) (2005).

100.    Plaintiff is also a "qualified individual with a disability" as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111(8), which is the definition used in discrimination complaints brought under the Rehabilitation Act. 29 U.S.C. § 791(g).

101.    Defendant had notice of both the Plaintiff's disability and the Plaintiff's request for reasonable accommodation.

102.    Defendant's refusal and continued refusal to provide reasonable accommodation for the Plaintiff's disability is in violation of the Rehabilitation Act, as amended. Id. § 791.

103.    As a direct and proximate cause of the actions set forth above, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, pain, suffering, attorney fees, medical expenses and other damages.

## IX.   COUNT TWO: DISCRIMINATORY TREATMENT IN VIOLATION OF TITLE VII

104.    Plaintiff hereby incorporates paragraphs 1-97 above by reference.

105.    The activities described in paragraphs 1-97, above in this Complaint constitute unlawful

harassment and a hostile work environment for the Plaintiff in violation of Title VII, as amended.

42 U.S.C. § 2000e, *et seq.*

106.    As a direct and proximate cause of the actions set forth above, the Plaintiff has suffered

and continues to suffer damages, including, but not limited to, pain, suffering, damage to

professional reputation, attorney fees and other damages.

## X.   COUNT THREE: RETALIATION FOR PARTICIPATION IN EQUAL OPPORTUNITY ACTIVITY IN VIOLATION OF TITLE VII

103.    Plaintiff has engaged in statutorily protected EEO activities. Specifically, Plaintiff filed a

request for EEO counseling on or about August 30, 2006, and has subsequently pursued

counseling and filed additional formal complaints of discrimination wit the Department.

104.    Defendant knew from the first EEO charge that Plaintiff had engaged in statutorily

protected EEO activities. Moreover, LM officials Terrance Brennan and Celinda Crawford

provided statements to EEO counselor Gerald Tognetti.

105.    The activities described in this Complaint were instituted in violation of the prohibition

on reprisals against employees that have engaged in statutorily protected EEO activities.

106.    LM management officials, as described above, have  retaliated against Plaintiff for

engaging in statutorily protected EEO activities in violation of Title VII, as amended, 42 U.S.C.

§ 2000e, *et seq.*

107.    There is a direct and proximate nexus between Plaintiff's participation with the EEOC in

statutorily protected activities and the Defendant's unlawful treatment of the Plaintiff.

108.    The effect of the retaliatory employment practices and actions taken by Defendant, as set forth above, has been to deprive Plaintiff of promotional opportunities, benefits and privileges, and otherwise adversely affect and alter the terms and conditions of employment for Plaintiff.

109.    As a direct and proximate cause of the actions set forth above, Plaintiff has suffered and continues to suffer damages, including, but not limited to, pain, suffering, attorney fees and other damages.

### XI.    COUNT FOUR: VIOLATION OF THE PRIVACY ACT BY POSTING PLAINTIFF'S CONFIDENTIAL RECORDS ON A WIDELY ACCESSIBLE COMPUTER SERVER AND OTHER ACTS

110.    Plaintiff hereby incorporates paragraphs 1-97 above by reference.

111.    LM management, without the consent of the Plaintiff, placed confidential records, including confidential medical information, on two widely used drives on the LM server. The files on these drives are available to all of Defendant's federal employees and outside contractors with access to the Headquarters, upon request.

112.    Defendant violated the Privacy Act of 1974, 5 U.S.C.A. § 552a, by willfully and intentionally storing the Plaintiff's confidential medical documentation on its server and thereby intentionally making it accessible to other Agency employees and contractors.

113.    Defendant violated the Privacy Act by other willful and intentional acts, such as those described at ¶¶ 46 -51 of this Complaint.

114.    As a direct and proximate cause of the actions set forth above, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, pain, suffering, damage to professional reputation, attorney fees and other damages.

## XII.  **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays that this Honorable Court grant her the following relief, namely:

1.  That Defendant provide Plaintiff with reasonable accommodation, including but not limited to reassignment;

2.  That Defendant provide Plaintiff with a workplace free of unlawful harassment, discrimination, retaliation or a hostile work environment;

3.  That Defendant award Plaintiff back pay and front pay;

4.  That Defendant award Plaintiff full "make whole" relief, including any lost pay, benefits, seniority and training opportunities resulting from management's unlawful conduct;

5.  That Defendant award Plaintiff compensatory damages, including, but not limited to, reimbursement for medical and other expenses, attorneys' fees, and compensation for severe emotional suffering and stress, and damage to professional reputation and professional status and interest;

6.  That Defendant award Plaintiff damages as provided in 5 U.S.C. § 552a(g)(4)(1);

7.  That Defendant award Plaintiff reasonable attorney's fees and costs under Title VII, 42 U.S.C. § 2000e-5(k) and as otherwise provided under law; and

8.  Any and all other forms of relief which this Court deems just.

Respectfully submitted,

Cheryl Polydor, Esq.
DC Bar Id #: 454066
John Berry, PLLC
1990 M Street, NW
Suite 610
Washington, DC 20036
(202) 955-1100
Fax: (202) 955-1101
<u>Attorney for Plaintiff</u>

Dated: October 25, 2006

RECEIVED
U.S. COURT OF APPEALS
FOR THE D.C. CIRCUIT
2006 JUN 34 AM 12: 03
FILING DEPOSITORY

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Marilyn Tolbert-Smith,<br>12529 Covenant Way<br>Hagerstown, MD 21742<br><br>       Plaintiff,<br><br>    v.<br><br>Samuel Bodman,<br>Secretary<br>U.S. Department of Energy<br>1000 Independence Avenue, S.W.<br>Washington, D.C., 20585<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. _____

## COMPLAINT

### I.    INTRODUCTION

Plaintiff Marilyn Tolbert-Smith ("Plaintiff" or "Ms. Tolbert-Smith") brings this

Complaint against the United States Department of Energy ("Defendant" or "Department"), for

violations of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 ("Rehabilitation

Act"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII");

and the Privacy Act of 1974, 5 U.S.C.A. § 552a. These violations arise from the Defendant's

failure to reasonably accommodate Plaintiff's disability; Defendant's discriminatory treatment of

Plaintiff, including disability-based harassment and a hostile work environment created by

management officials in the Defendant's Office of Legacy Management ("LM") and other

offices; Defendant's reprisal for Plaintiff's prior participation in statutorily protected Equal

Employment Opportunity ("EEO") activities; and Defendant's willful and unlawful disclosure of

confidential information relating to Plaintiff's reasonable accommodation request, and medical

diagnosis and treatment, without her consent.

## II.    JURISDICTION

1.       This action is authorized pursuant to Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. § 2000e, *et seq*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §

791; and the Privacy Act of 1974, 5 U.S.C.A. § 552a.

2.       Jurisdiction of this court over the Title VII and Rehabilitation Act claims is founded upon

28 U.S.C. §§ 1331 and 1343.

3.       Jurisdiction of this court over the Privacy Act claim is founded upon 5 U.S.C.

§§ 552a(g)(1)(D), because Defendant improperly and illegally disclosed confidential information

about Plaintiff without her consent from its records.

## III.    VENUE

3.       Venue is proper in this court pursuant to 42 U.S.C. § 2000e(5)(f)(3).  Venue is proper in

the District of Columbia because the "employment records relevant" to the unlawful employment

practice alleged in this case "are maintained and administered" in the District of Columbia.  The

Defendant also has its principal office, or headquarters,  in the District of Columbia.

4.       Venue is also proper in this Court pursuant to 5 U.S.C. § 552a(g)(5), which makes

permissible the filing of civil actions under the Privacy Act of 1974 in the United States District

Court for the District of Columbia for federal agencies such as the Department of Energy.

## IV.    JURY DEMAND

5.       Plaintiff demands a trial by jury for her claim pursuant Fed. R. Civ. P. 38 and Section 102

of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c)(1).

## V.    PARTIES

6.    Plaintiff is an employee of the Defendant as a program analyst in LM, and is a citizen of
both the United States and the state of Maryland.

7.    Defendant is an agency of the United States with its headquarters in the District of
Columbia.

## VI.    PRIOR ADMINISTRATIVE PROCEEDINGS AND EXHAUSTION OF REMEDIES

8.    Plaintiff filed a Request for Counseling with Defendant's Office of Civil Rights on or
about August 31, 2005, concerning the matters discussed in this Complaint.

9.    Plaintiff participated in the administrative counseling process.

10.    Plaintiff's attorney notified Defendant in writing, prior to January 11, 2006, that she was
Plaintiff's legal representative in this matter. The Plaintiff's attorney also provided Defendant
with a designation of representative form, as signed by Plaintiff on November 30, 2005.

11.    Plaintiff's attorney also specifically notified Frank Vaccarella, Esq., in Defendant's
Office of Civil Rights, both orally and in writing, prior to January 11, 2006, that she was
Plaintiff's legal representative in this matter, and noted that a copy of the designation of
representative form signed by Plaintiff already was on file with Defendant.

12.    In addition, Plaintiff herself informed several management officials, prior to January 11,
2006, that she was represented by attorney Cheryl Polydor, Esq.

13.    Plaintiff's attorney received her "Notice of Final Interview with EEO Counselor and
Right to File a Formal Complaint of Discrimination," dated January 11, 2006, on February 22,
2006. Accordingly, Plaintiff was required to file her Formal Compliant of Discrimination on or
before March 9, 2006.

14.    Plaintiff timely filed her Formal EEO Complaint with Defendant.

3

15.    Plaintiff, by her attorney, mailed her Formal EEO Complaint to Defendant on February 9, 2006, in a postage pre-paid envelope, postmarked February 9, 2006.

16.    On or about February 17, 2006, Plaintiff's Formal EEO Complaint was returned by the U.S. Postal Service to Plaintiff's attorney at her place of businesss; namely, John Berry, PLLC, 1990 M Street, NW, Suite 610, Washington, DC 20036, from which she had mailed the Complaint on February 9, 2006. The address label on the returned envelope had been removed or destroyed in the course of handling by the U.S. Postal Service.

17.    On February 17, 2006, Plaintiff's attorney again placed Plaintiff's Formal EEO Complaint in the mail, in a postage pre-paid envelope, postmarked February 17, 2006.

18.    On April 3, 2006, Plaintiff's attorney received a "Notice of Dismissal of Formal Complaint of Discrimination and Statement of Rights" sent by Defendant's Office of Civil Rights and Diversity. The "Notice" stated that Plaintiff had filed her Formal EEO Complaint on February 17, 2006, and informed Plaintiff that Defendant was dismissing it as untimely filed.

19.    As stated in Defendant's "Notice of Dismissal of Formal Compliant of Discrimination and Statement of Rights," referenced above, Plaintiff filed her Formal EEO Complaint prior to March 9, 2006. Accordingly, Defendant wrongfully dismissed Plaintiff's Formal Compliant of Discrimination on grounds that it was untimely filed.

## VII.    FACTS

20.    Plaintiff Marilyn Tolbert-Smith is, and has been since 1991, employed by the Defendant. Ms. Tolbert-Smith has worked for LM as a program analyst since its formation in December 2003.

21.    Ms. Tolbert-Smith's primary area of professional expertise and experience is information technology management.

4

22.    Currently, and at all times relevant to this Complaint, Ms. Tolbert-Smith's first-line supervisor has been Terrance Brennan. Mr. Brennan's title is Team Leader – Archives and Records Management, for LM.

23.    Currently, and at all times relevant to this Complaint, Ms. Tolbert-Smith's second-line supervisor has been Celinda Crawford. Ms. Crawford's title is Director, Business and Resource Management, for LM.

24.    Currently, and at all times relevant to this Complaint, David Geiser has been a management official in LM. His title is Acting Director, Office of Policy and Site Transition, for LM.

25. Currently, and at all times relevant to this Complaint, Michael Owen has served as LM Director.

26.    Prior to reporting to her current supervisor, Terrance Brennan, Ms. Tolbert-Smith never received any negative comments regarding her work from any supervisor in her fifteen-plus years of service with the Department.

27.    Plaintiff has a "disability," as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12102(2), which is the definition used for discrimination complaints under the Rehabilitation Act. Her disability limits her ability to engage in certain major life activities, and results in her requiring reasonable accommodation for her disability.

28.    Specifically, Plaintiff has a mental disability in the form of clinical depression.

29.    Plaintiff is a "qualified individual with a disability" as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111(8), which is the definition used in discrimination complaints brought under the Rehabilitation Act. 29 U.S.C. § 791(g).

30.     Defendant does not claim that Plaintiff is unable to perform the essential functions of her job, with or without reasonable accommodation.

31.     Plaintiff has a history of being disabled, as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12102(2), which is the definition used for discrimination complaints under the Rehabilitation Act.

32.     Plaintiff is perceived by Defendant as being disabled, as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12102(2), which is the definition used for discrimination complaints under the Rehabilitation Act.

33.     In June, 2004, and again in July, 2004, the Plaintiff requested reasonable accommodation from LM management to accommodate her disability.

34.     LM management was aware of Plaintiff's disability at the time she requested reasonable accommodation. Management officials aware of plaintiff's disability include Terrance Brennan, Celina Crawford, David Geiser and Michael Owen.

35.     Plaintiff requested reasonable accommodation specifically in the form of reassignment to a different supervisor and/or permission to work from home and/or more flextime and/or other forms of reasonable accommodation.

36.     Neither LM management nor any other management officials employed by Defendant responded to Plaintiff's repeated requests for reasonable accommodation, first made in June and July 2004, until December 22, 2005.

37.     Defendant refuses to date to provide appropriate reasonable accommodation to Plaintiff.

38.     Defendant refuses to date to provide reassignment, or even a temporary detail to another supervisor, to Plaintiff.

39.  Defendant, and specifically LM management, has afforded other LM employees the opportunity to work from home.

40.  Defendant, and specifically LM management, has assisted other employees in securing a temporary detail and/or reassignment.

41.  Between March, 2004, and July, 2005, LM management officials subjected Plaintiff to disability-based harassment and created a hostile work environment for Plaintiff. The LM management officials responsible for conducting and/or acquiescing in this harassment, and creation of a hostile work environment include Terrance Brennan, Celina Crawford, David Geiser and Michael Owen.

42.  In or around July 2004, LM management officials, including Terrance Brennan, Celinda Crawford and Michael Owen, explicitly directed Plaintiff not to attempt make any further communications to LM Director Michael Owen regarding her disability and her need for accommodation.

43.  In or around November, 2004, LM management officials further discriminated against Plaintiff by contacting Plaintiff's physician, Dr. Prescott, without her consent, and interfering with Plaintiff's medical care. Plaintiff's direct supervisor, Terrance Brennan, specifically made an in-person visit to Dr. Prescott, without Plaintiff's prior knowledge or consent, to request information about her illness and her medical treatment.

44.  Between March, 2004 and July, 2005, LM management, particularly her direct supervisor Terrance Brennan, made comments to Plaintiff at her workplace, frequently in the presence of Plaintiff's colleagues, regarding Plaintiff's illness; her alleged inability to overcome her illness; the lack of improvement in her illness; the medical treatment she was receiving; the alleged

ineffectiveness of the medical treatment she was receiving; and other comments relating to Plaintiff's illness.

45.    Mr. Brennan, on at least one occasion at the workplace, verbally chastised Plaintiff for "not trying hard enough" to overcome her illness. Mr. Brennan on another occasion at the workplace questioned whether Plaintiff was "taking her meds." Mr. Brennan on yet another occasion at the workplace made belittling comments about the alleged lack of efficacy of Plaintiff's medical treatment for her illness, and in particular, about the alleged lack of efficacy of the medical treatment provided by her physician, Dr. Prescott. Mr. Brennan also exhorted Plaintiff's colleagues on at least one occasion at the workplace to "pray for her."

46.    The comments, e-mails and phone calls referenced above, injured and distressed Plaintiff, and caused her great stress and humiliation.

47.    The comments, e-mails and phone calls referenced above created a hostile work environment for Plaintiff.

48.    The Plaintiff's professional reputation was damaged because of the public harassment which the Plaintiff faced at her workplace.

49.    In November 2004, the Plaintiff took a leave of absence from her job because of her illness.

50.    In March 2005, Plaintiff's physician, Dr. Prescott, stated in a report that the Plaintiff was able to return to work with reasonable accommodation, but LM management did not permit Plaintiff to return to work at this time.

51.    In late April 2005, Plaintiff returned to work without accommodation of any kind.

52.    The harassment and hostile work environment continued after Plaintiff's return to work in late April 2005.

8

53. During an office retreat between July 12, 2005, and July 14, 2005, Plaintiff was subjected to coercive and humiliating verbal harassment and intimidation by her direct supervisor, Terrance Brennan.

54. On July 19, 2005, and July 20, 2005, the harassment and hostile work environment worsened due to hostile phone calls and e-mails from LM management, specifically Terrance Brennan.

55. The harassment and hostile work environment reached a peak on July 26, 2005, while Plaintiff was traveling to Pittsburgh for a business meeting, in a telephone discussion with Terrance Brennan. In the telephone discussion, Terrance Brennan spoke abusively and threateningly to Ms. Tolbert-Smith.

56. The harassment from management and the hostile work environment eventually caused Plaintiff to experience a great state of stress and anxiety on July 28, 2005.

57. Plaintiff was hospitalized on July 28, 2005, in order to deal with her illness, which had been exacerbated by the harassment and hostile work environment she was facing from LM management at the time.

58. On or about August 31, 2005, the Plaintiff contacted Frank Vaccarella, Esq., Attorney-Advisor - EEO, in Defendant's Office of Civil Rights, and filed a Request for EEO Counseling..

59. On September 7, 2005, LM management placed Plaintiff on enforced administrative leave.

60. LM management placed Plaintiff on forced administrative leave based on a claim that her illness required it.

61. LM management's claim that Plaintiff's illness required them to place her on forced administrative leave, beginning September 7, 2005, was an unfounded, pretextual justification.

9

In fact, LM management placed Plaintiff on forced administrative leave in retaliation for her Plaintiff's participation in statutorily protected EEO activities just one week earlier; specifically, her requesting counseling on or about August 31, 2005.

62.     In September 2005, the Plaintiff's physician, Dr. Prescott, reported to LM management that Plaintiff was able to return to work with reasonable accommodation. Specifically, Dr. Prescott reported that Plaintiff required reasonable accommodation in the form of reassignment and flextime.

63. However, LM management did not permit Plaintiff to return to work in September 2005. Management refused to permit Plaintiff to return to work despite her physician's documentation that she was able to do so, as a further act of discrimination and in retaliation for her participation in statutorily protected EEO activities; specifically, requesting counseling on or about August 31, 2005.

64.     In October 2005, Plaintiff filed a FOIA/ Privacy Act request for records and information including those relating to communications between herself and members of LM management. To date, Defendant has failed to complete its response to Plaintiff's FOIA/Privacy Act request. Specifically, Defendant still has not provided copies to her of responsive e-mails and other communications sent to her by Terrance Brennan and Celinda Crawford. These matertials are necessary for Plaintiff to fully pursue her rights in the EEO complaint that is the subject of this Complkaint.

65.     Plaintiff Marilyn Tolbert-Smith retained the legal services of the Law Firm of John Berry, PLLC, on or about November 30, 2005. Attorney Cheryl Polydor of the Firm undertook Plaintiff's representation and contacted Defendant shortly theraffter.

66.    By letter dated December 22, 2005, Defendant responded to Plaintiff's requests for reasonable accommodation for the first time, offering her the services of an EAp counselor and specifically denying her request fro reassignment.

67.    By letter dated December 22, 2005, LM management radically restructured the Plaintiff's performance standards, fundamentally changing the nature of the Plaintiff's job from information technology management, her longstanding area of professional expertise, to records management.

68.    LM management radically restructured Plaintiff's job, as described in Paragraph xx, above, as a further act of discrimination, and in retaliation for her prior EEO activity. Specifically, LM management imposed the new performance standards in an attempt to "set up" Plaintiff for failure and set the stage for unjustified and pretextual disciplinary and/or adverse action.

69.    On or about December 22, 2005, LM management intentionally and willfully placed confidential information regarding the Plaintiff's illness and medical treatment, her request for accommodation, Defendant's response to that request, and information regarding Plaintiff's FOIA request on two LM drives located on their LAN server.

70.    LM management placed the information described in paragraph xx, above, specifically on both the Y and P drives, on the Defendant's Headquarters Local Area Network. The Y drive is accessible by all of Defendant's federal employees and outside contractors , upon request.

71.    Either Celinda Crawford, or someone else with access to the workplace computer assigned by Defendant to Celinda Crawford, placed the information described above, on the server.

72.    Management officials among LM's Human Resources staff also knew of the placement of this information on the server, and did nothing to prevent or correct the unlawful disclosure.

73.    Plaintiff became aware of Defendant's placement of her confidential information on its server on or about March 31, 2006, shortly after she returned to work. She promptly reported her discovery to her LM management.

74.    In an e-mail message dated March 31, 2006, transmitted at approximately 12:08:09 pm Eastern Standard Time, Terrance Brennan responded to Plaintiff's concerns by stating in pertinent part that "I've just learned that this area of the shared drive (P) contains LM's official correspondence files. Because you expressed concern, LM will review this material and remove any official correspondence, related to yourself, that you feel may contain sensitive information. However, the use of the share [sic] drive in question is standard practice for all official LM correspondence to ensure the government maintains a record of all official business activities consistent [sic] requirements established within CFR 36, Chapter 12."

75.    Defendant's willful placement of Plaintiff's confidential information on its server constituted a further act of discrimination and retaliation against Ms. Tolbert-Smith and further contributed to the hostile work environment she faced and continues to face.

76.    In January 2006, Plaintiff's physician, Dr Prescott, again stated in a report that Plaintiff was able to return to work with reasonable accommodation. Lm management officials failed to permit Plaintiff to return to work, or to explore or offer reasonable accommodation. Defendant's unlawful conduct was a further act of discrimination, and retaliation for the Plaintiff's participation in statutorily protected EEO activities.

77.    In February 2006, Plaintiff filed a Formal EEO Complaint through her attorney, Cheryl Polydor, Esq.

12

78.     On or about March 28, 2006, Defendant permitted Plaintiff to return to work.

79..    Defendant has continued to request and seek reassignment since her return to work.

80.     Defendant to date has failed to provide Plaintiff with reassignment or other appropriate reasonable accommodation.

81.     The Plaintiff has complied with all requirements of the federal sector EEO process, by making a timely request for counseling, participating in counseling, and then timely filing a Formal EEO Complaint with Defendant, which Defendant wrongfully dismissed. Thus, the Plaintiff has exhausted her administrative remedies and now comes before this Court to seek relief.

## VIII.    COUNT ONE: DISABILITY DISCRIMINATION - FAILURE TO ACCOMMODATE PLAINTIFF'S DISABILITY IN VIOLATION OF THE REHABILITATION ACT

82.     Plaintiff hereby incorporates paragraphs 1-81 above by reference.

83.     Plaintiff has a mental "disability" as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. § 12102(2), which is the definition used in discrimination complaints brought under the Rehabilitation Act. 29 U.S.C. § 791(g) (2005).

84.     Plaintiff is also a "qualified individual with a disability" as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111(8), which is the definition used in discrimination complaints brought under the Rehabilitation Act. 29 U.S.C. § 791(g).

85.     Defendant had notice of both the Plaintiff's disability and the Plaintiff's request for reasonable accommodation.

86.     Defendant's refusal and continued refusal to provide reasonable accommodation for the Plaintiff's disability is in violation of the Rehabilitation Act, as amended. Id. § 791.

87..    As a direct and proximate cause of the actions set forth above, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, pain, suffering, attorney fees, medical expenses and other damages.

## IX.    COUNT TWO: DISCRIMINATORY TREATMENT IN VIOLATION OF TITLE VII

88.    Plaintiff hereby incorporates paragraphs 1-81 above by reference.

89.    The activities described in paragraphs 1-40, above in this Complaint constitute unlawful harassment and a hostile work environment for the Plaintiff in violation of Title VII, as amended. 42 U.S.C. § 2000e, *et seq.*

90.    As a direct and proximate cause of the actions set forth above, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, pain, suffering, damage to professional reputation, attorney fees and other damages.

## X.    COUNT THREE: RETALIATION FOR PARTICIPATION IN EQUAL OPPORTUNITY ACTIVITY IN VIOLATION OF TITLE VII

91.    Plaintiff engaged in statutorily protected EEO activities. Specifically, Plaintiff filed a request for EEO counseling on or about August 30, 2006.

92.    Defendant knew that Plaintiff engaged in statutorily protected EEO activities. Moreover, LM officials Terrance Brennan and Celinda Crawford provided statements to EEO counselor Gerald Tognetti.

93.    The activities described in this Complaint were instituted in violation of the prohibition on reprisals against employees that have engaged in statutorily protected EEO activities.

94.    LM management officials, as described above, have retaliated against Plaintiff for engaging in statutorily protected EEO activities in violation of Title VII, as amended, 42 U.S.C. § 2000e, *et seq.*

95.    There is a direct and proximate nexus between Plaintiff's participation with the EEOC in

statutorily protected activities and the Defendant's unlawful treatment of the Plaintiff.

96.    The effect of the retaliatory employment practices and actions taken by Defendant, as set

forth above, has been to deprive Plaintiff of promotional opportunities, benefits and privileges,

and otherwise adversely affect and alter the terms and conditions of employment for Plaintiff.

97.    As a direct and proximate cause of the actions set forth above, Plaintiff has suffered and

continues to suffer damages, including, but not limited to, pain, suffering, attorney fees and other

damages.

### XI.    COUNT FOUR: VIOLATION OF THE PRIVACY ACT BY POSTING PLAINTIFF'S CONFIDENTIAL RECORDS ON A WIDELY ACCESSIBLE COMPUTER SERVER.

98.    Plaintiff hereby incorporates paragraphs 1-40 above by reference.

99.    LM management, without the consent of the Plaintiff, placed confidential records,

including confidential medical information, on two widely used drives on the LM server. The

files on these drives are available to all of Defendant's federal employees and outside contractors

with access to the Headquarters , upon request.    ******

100.    Defendant violated the Privacy Act of 1974, 5 U.S.C.A. § 552a, by willfully and

intentionally storing the Plaintiff's confidential medical documentation on its server and thereby

intentionally making it accessible to other Agency employees and contractors.

101.    As a direct and proximate cause of the actions set forth above, the Plaintiff has suffered

and continues to suffer damages, including, but not limited to, pain, suffering, damage to

professional reputation, attorney fees and other damages.

### XII. PRAYER FOR RELIEF

15

Wherefore, Plaintiff prays that this Honorable Court grant her the following relief, namely:

1. That Defendant provide Plaintiff with reasonable accommodation, including but not limited to reassignment;

2. That Defendant provide Plaintiff with a workplace free of unlawful harassment, discrimination, retaliation or a hostile work environment;

3. That Defendant award Plaintiff back pay and front pay;

4. That Defendant award Plaintiff full "make whole" relief, including any lost pay, benefits, seniority and training opportunities resulting from management's unlawful conduct;

5. That Defendant award Plaintiff compensatory damages, including, but not limited to, reimbursement for medical and other expenses, attorneys' fees, and compensation for severe emotional suffering and stress, and damage to professional reputation and professional status and interest;

6. That Defendant award Plaintiff damages as provided in 5 U.S.C. § 552a(g)(4)(1);

7. That Defendant award Plaintiff reasonable attorney's fees and costs under Title VII, 42 U.S.C. § 2000e-5(k) and as otherwise provided under law; and

8. Any and all other forms of relief which this Court deems just.

Respectfully submitted,

Cheryl Polydor, Esq.
DC Bar Id #: 454066
John Berry, PLLC
1990 M Street, NW
Suite 610
Washington, DC 20036

16

(202) 955-1100
Fax: (202) 955-1101
<u>Attorney for Plaintiff</u>

Dated: July 3, 2006