UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Marilyn Tolbert-Smith,            )
12529 Covenant Way                )
Hagerstown, MD 21742              )
                                  )
       Plaintiff,                 )
                                  )
v.                                )   Civil Action No. _____
                                  )
Samuel Bodman,                    )
Secretary                         )
U.S. Department of Energy         )
1000 Independence Avenue, S.W.    )
Washington, D.C., 20585           )
                                  )
       Defendant.                 )
_____)

## COMPLAINT

### I. INTRODUCTION

Plaintiff Marilyn Tolbert-Smith ("Plaintiff" or "Ms. Tolbert-Smith") brings this Complaint against the United States Department of Energy ("Defendant" or "Department"), for violations of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 ("Rehabilitation Act"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"); and the Privacy Act of 1974, 5 U.S.C.A. § 552a. These violations arise from the Defendant's failure to reasonably accommodate Plaintiff's disability; Defendant's discriminatory treatment of Plaintiff, including disability-based harassment and a hostile work environment created by management officials in the Defendant's Office of Legacy Management ("LM") and other offices; Defendant's reprisal for Plaintiff's prior participation in statutorily protected Equal Employment Opportunity ("EEO") activities; and Defendant's willful and unlawful disclosure of



confidential information relating to Plaintiff's reasonable accommodation request, and medical diagnosis and treatment, without her consent.

## II. JURISDICTION

1. This action is authorized pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791; and the Privacy Act of 1974, 5 U.S.C.A. § 552a.

2. Jurisdiction of this court over the Title VII and Rehabilitation Act claims is founded upon 28 U.S.C. §§ 1331 and 1343.

3. Jurisdiction of this court over the Privacy Act claim is founded upon 5 U.S.C. §§ 552a(g)(1)(D), because Defendant improperly and illegally disclosed confidential information about Plaintiff without her consent from its records.

## III. VENUE

3. Venue is proper in this court pursuant to 42 U.S.C. § 2000e(5)(f)(3). Venue is proper in the District of Columbia because the "employment records relevant" to the unlawful employment practice alleged in this case "are maintained and administered" in the District of Columbia. The Defendant also has its principal office, or headquarters, in the District of Columbia.

4. Venue is also proper in this Court pursuant to 5 U.S.C. § 552a(g)(5), which makes permissible the filing of civil actions under the Privacy Act of 1974 in the United States District Court for the District of Columbia for federal agencies such as the Department of Energy.

## IV. JURY DEMAND

5. Plaintiff demands a trial by jury for her claim pursuant Fed. R. Civ. P. 38 and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c)(1).

## V.   PARTIES

6. Plaintiff is an employee of the Defendant as a program analyst in LM, and is a citizen of both the United States and the state of Maryland.

7. Defendant is an agency of the United States with its headquarters in the District of Columbia.

## VI.   PRIOR ADMINISTRATIVE PROCEEDINGS AND EXHAUSTION OF REMEDIES

8. Plaintiff filed a Request for Counseling with Defendant's Office of Civil Rights on or about August 31, 2005, concerning the matters discussed in this Complaint.

9. Plaintiff participated in the administrative counseling process.

10. Plaintiff's attorney notified Defendant in writing, prior to January 11, 2006, that she was Plaintiff's legal representative in this matter. The Plaintiff's attorney also provided Defendant with a designation of representative form, as signed by Plaintiff on November 30, 2005.

11. Plaintiff's attorney also specifically notified Frank Vaccarella, Esq., in Defendant's Office of Civil Rights, both orally and in writing, prior to January 11, 2006, that she was Plaintiff's legal representative in this matter, and noted that a copy of the designation of representative form signed by Plaintiff already was on file with Defendant.

12. In addition, Plaintiff herself informed several management officials, prior to January 11, 2006, that she was represented by attorney Cheryl Polydor, Esq.

13. Plaintiff's attorney received her "Notice of Final Interview with EEO Counselor and Right to File a Formal Complaint of Discrimination," dated January 11, 2006, on February 22, 2006. Accordingly, Plaintiff was required to file her Formal Compliant of Discrimination on or before March 9, 2006.

14. Plaintiff timely filed her Formal EEO Complaint with Defendant.

3

15. Plaintiff, by her attorney, mailed her Formal EEO Complaint to Defendant on February 9, 2006, in a postage pre-paid envelope, postmarked February 9, 2006.

16. On or about February 17, 2006, Plaintiff's Formal EEO Complaint was returned by the U.S. Postal Service to Plaintiff's attorney at her place of businesss; namely, John Berry, PLLC, 1990 M Street, NW, Suite 610, Washington, DC 20036, from which she had mailed the Complaint on February 9, 2006. The address label on the returned envelope had been removed or destroyed in the course of handling by the U.S. Postal Service.

17. On February 17, 2006, Plaintiff's attorney again placed Plaintiff's Formal EEO Complaint in the mail, in a postage pre-paid envelope, postmarked February 17, 2006.

18. On April 3, 2006, Plaintiff's attorney received a "Notice of Dismissal of Formal Complaint of Discrimination and Statement of Rights" sent by Defendant's Office of Civil Rights and Diversity. The "Notice" stated that Plaintiff had filed her Formal EEO Complaint on February 17, 2006, and informed Plaintiff that Defendant was dismissing it as untimely filed.

19. As stated in Defendant's "Notice of Dismissal of Formal Compliant of Discrimination and Statement of Rights," referenced above, Plaintiff filed her Formal EEO Complaint prior to March 9, 2006. Accordingly, Defendant wrongfully dismissed Plaintiff's Formal Compliant of Discrimination on grounds that it was untimely filed.

## VII. FACTS

20. Plaintiff Marilyn Tolbert-Smith is, and has been since 1991, employed by the Defendant. Ms. Tolbert-Smith has worked for LM as a program analyst since its formation in December 2003.

21. Ms. Tolbert-Smith's primary area of professional expertise and experience is information technology management.

4

22. Currently, and at all times relevant to this Complaint, Ms. Tolbert-Smith's first-line supervisor has been Terrance Brennan. Mr. Brennan's title is Team Leader – Archives and Records Management, for LM.

23. Currently, and at all times relevant to this Complaint, Ms. Tolbert-Smith's second-line supervisor has been Celinda Crawford. Ms. Crawford's title is Director, Business and Resource Management, for LM.

24. Currently, and at all times relevant to this Complaint, David Geiser has been a management official in LM. His title is Acting Director, Office of Policy and Site Transition, for LM.

25. Currently, and at all times relevant to this Complaint, Michael Owen has served as LM Director.

26. Prior to reporting to her current supervisor, Terrance Brennan, Ms. Tolbert-Smith never received any negative comments regarding her work from any supervisor in her fifteen-plus years of service with the Department.

27. Plaintiff has a "disability," as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12102(2), which is the definition used for discrimination complaints under the Rehabilitation Act. Her disability limits her ability to engage in certain major life activities, and results in her requiring reasonable accommodation for her disability.

28. Specifically, Plaintiff has a mental disability in the form of clinical depression.

29. Plaintiff is a "qualified individual with a disability" as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111(8), which is the definition used in discrimination complaints brought under the Rehabilitation Act. 29 U.S.C. § 791(g).

30. Defendant does not claim that Plaintiff is unable to perform the essential functions of her job, with or without reasonable accommodation.

31. Plaintiff has a history of being disabled, as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12102(2), which is the definition used for discrimination complaints under the Rehabilitation Act.

32. Plaintiff is perceived by Defendant as being disabled, as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12102(2), which is the definition used for discrimination complaints under the Rehabilitation Act.

33. In June, 2004, and again in July, 2004, the Plaintiff requested reasonable accommodation from LM management to accommodate her disability.

34. LM management was aware of Plaintiff's disability at the time she requested reasonable accommodation. Management officials aware of plaintiff's disability include Terrance Brennan, Celina Crawford, David Geiser and Michael Owen.

35. Plaintiff requested reasonable accommodation specifically in the form of reassignment to a different supervisor and/or permission to work from home and/or more flextime and/or other forms of reasonable accommodation.

36. Neither LM management nor any other management officials employed by Defendant responded to Plaintiff's repeated requests for reasonable accommodation, first made in June and July 2004, until December 22, 2005.

37. Defendant refuses to date to provide appropriate reasonable accommodation to Plaintiff.

38. Defendant refuses to date to provide reassignment, or even a temporary detail to another supervisor, to Plaintiff.

39. Defendant, and specifically LM management, has afforded other LM employees the opportunity to work from home.

40. Defendant, and specifically LM management, has assisted other employees in securing a temporary detail and/or reassignment.

41. Between March, 2004, and July, 2005, LM management officials subjected Plaintiff to disability-based harassment and created a hostile work environment for Plaintiff. The LM management officials responsible for conducting and/or acquiescing in this harassment, and creation of a hostile work environment include Terrance Brennan, Celina Crawford, David Geiser and Michael Owen.

42. In or around July 2004, LM management officials, including Terrance Brennan, Celinda Crawford and Michael Owen, explicitly directed Plaintiff not to attempt make any further communications to LM Director Michael Owen regarding her disability and her need for accommodation.

43. In or around November, 2004, LM management officials further discriminated against Plaintiff by contacting Plaintiff's physician, Dr. Prescott, without her consent, and interfering with Plaintiff's medical care. Plaintiff's direct supervisor, Terrance Brennan, specifically made an in-person visit to Dr. Prescott, without Plaintiff's prior knowledge or consent, to request information about her illness and her medical treatment.

44. Between March, 2004 and July, 2005, LM management, particularly her direct supervisor Terrance Brennan, made comments to Plaintiff at her workplace, frequently in the presence of Plaintiff's colleagues, regarding Plaintiff's illness; her alleged inability to overcome her illness; the lack of improvement in her illness; the medical treatment she was receiving; the alleged

53. During an office retreat between July 12, 2005, and July 14, 2005, Plaintiff was subjected to coercive and humiliating verbal harassment and intimidation by her direct supervisor, Terrance Brennan.

54. On July 19, 2005, and July 20, 2005, the harassment and hostile work environment worsened due to hostile phone calls and e-mails from LM management, specifically Terrance Brennan.

55. The harassment and hostile work environment reached a peak on July 26, 2005, while Plaintiff was traveling to Pittsburgh for a business meeting, in a telephone discussion with Terrance Brennan. In the telephone discussion, Terrance Brennan spoke abusively and threateningly to Ms. Tolbert-Smith.

56. The harassment from management and the hostile work environment eventually caused Plaintiff to experience a great state of stress and anxiety on July 28, 2005.

57. Plaintiff was hospitalized on July 28, 2005, in order to deal with her illness, which had been exacerbated by the harassment and hostile work environment she was facing from LM management at the time.

58. On or about August 31, 2005, the Plaintiff contacted Frank Vaccarella, Esq., Attorney-Advisor - EEO, in Defendant's Office of Civil Rights, and filed a Request for EEO Counseling.

59. On September 7, 2005, LM management placed Plaintiff on enforced administrative leave.

60. LM management placed Plaintiff on forced administrative leave based on a claim that her illness required it.

61. LM management's claim that Plaintiff's illness required them to place her on forced administrative leave, beginning September 7, 2005, was an unfounded, pretextual justification.

9

In fact, LM management placed Plaintiff on forced administrative leave in retaliation for her Plaintiff's participation in statutorily protected EEO activities just one week earlier; specifically, her requesting counseling on or about August 31, 2005.

62. In September 2005, the Plaintiff's physician, Dr. Prescott, reported to LM management that Plaintiff was able to return to work with reasonable accommodation. Specifically, Dr. Prescott reported that Plaintiff required reasonable accommodation in the form of reassignment and flextime.

63. However, LM management did not permit Plaintiff to return to work in September 2005. Management refused to permit Plaintiff to return to work despite her physician's documentation that she was able to do so, as a further act of discrimination and in retaliation for her participation in statutorily protected EEO activities; specifically, requesting counseling on or about August 31, 2005.

64. In October 2005, Plaintiff filed a FOIA/ Privacy Act request for records and information including those relating to communications between herself and members of LM management. To date, Defendant has failed to complete its response to Plaintiff's FOIA/Privacy Act request. Specifically, Defendant still has not provided copies to her of responsive e-mails and other communications sent to her by Terrance Brennan and Celinda Crawford. These materials are necessary for Plaintiff to fully pursue her rights in the EEO complaint that is the subject of this Complkaint.

65. Plaintiff Marilyn Tolbert-Smith retained the legal services of the Law Firm of John Berry, PLLC, on or about November 30, 2005. Attorney Cheryl Polydor of the Firm undertook Plaintiff's representation and contacted Defendant shortly therafter.

66. By letter dated December 22, 2005, Defendant responded to Plaintiff's requests for reasonable accommodation for the first time, offering her the services of an EAp counselor and specifically denying her request fro reassignment.

67. By letter dated December 22, 2005, LM management radically restructured the Plaintiff's performance standards, fundamentally changing the nature of the Plaintiff's job from information technology management, her longstanding area of professional expertise, to records management.

68. LM management radically restructured Plaintiff's job, as described in Paragraph xx, above, as a further act of discrimination, and in retaliation for her prior EEO activity. Specifically, LM management imposed the new performance standards in an attempt to "set up" Plaintiff for failure and set the stage for unjustified and pretextual disciplinary and/or adverse action.

69. On or about December 22, 2005, LM management intentionally and willfully placed confidential information regarding the Plaintiff's illness and medical treatment, her request for accommodation, Defendant's response to that request, and information regarding Plaintiff's FOIA request on two LM drives located on their LAN server.

70. LM management placed the information described in paragraph xx, above, specifically on both the Y and P drives, on the Defendant's Headquarters Local Area Network. The Y drive is accessible by all of Defendant's federal employees and outside contractors, upon request.

71. Either Celinda Crawford, or someone else with access to the workplace computer assigned by Defendant to Celinda Crawford, placed the information described above, on the server.

ineffectiveness of the medical treatment she was receiving; and other comments relating to Plaintiff's illness.

45. Mr. Brennan, on at least one occasion at the workplace, verbally chastised Plaintiff for "not trying hard enough" to overcome her illness. Mr. Brennan on another occasion at the workplace questioned whether Plaintiff was "taking her meds." Mr. Brennan on yet another occasion at the workplace made belittling comments about the alleged lack of efficacy of Plaintiff's medical treatment for her illness, and in particular, about the alleged lack of efficacy of the medical treatment provided by her physician, Dr. Prescott. Mr. Brennan also exhorted Plaintiff's colleagues on at least one occasion at the workplace to "pray for her."

46. The comments, e-mails and phone calls referenced above, injured and distressed Plaintiff, and caused her great stress and humiliation.

47. The comments, e-mails and phone calls referenced above created a hostile work environment for Plaintiff.

48. The Plaintiff's professional reputation was damaged because of the public harassment which the Plaintiff faced at her workplace.

49. In November 2004, the Plaintiff took a leave of absence from her job because of her illness.

50. In March 2005, Plaintiff's physician, Dr. Prescott, stated in a report that the Plaintiff was able to return to work with reasonable accommodation, but LM management did not permit Plaintiff to return to work at this time.

51. In late April 2005, Plaintiff returned to work without accommodation of any kind.

52. The harassment and hostile work environment continued after Plaintiff's return to work in late April 2005.

72. Management officials among LM's Human Resources staff also knew of the placement of this information on the server, and did nothing to prevent or correct the unlawful disclosure.

73. Plaintiff became aware of Defendant's placement of her confidential information on its server on or about March 31, 2006, shortly after she returned to work. She promptly reported her discovery to her LM management.

74. In an e-mail message dated March 31, 2006, transmitted at approximately 12:08:09 pm Eastern Standard Time, Terrance Brennan responded to Plaintiff's concerns by stating in pertinent part that "I've just learned that this area of the shared drive (P) contains LM's official correspondence files. Because you expressed concern, LM will review this material and remove any official correspondence, related to yourself, that you feel may contain sensitive information. However, the use of the share [sic] drive in question is standard practice for all official LM correspondence to ensure the government maintains a record of all official business activities consistent [sic] requirements established within CFR 36, Chapter 12."

75. Defendant's willful placement of Plaintiff's confidential information on its server constituted a further act of discrimination and retaliation against Ms. Tolbert-Smith and further contributed to the hostile work environment she faced and continues to face.

76. In January 2006, Plaintiff's physician, Dr Prescott, again stated in a report that Plaintiff was able to return to work with reasonable accommodation. Lm management officials failed to permit Plaintiff to return to work, or to explore or offer reasonable accommodation. Defendant's unlawful conduct was a further act of discrimination, and retaliation for the Plaintiff's participation in statutorily protected EEO activities.

77. In February 2006, Plaintiff filed a Formal EEO Complaint through her attorney, Cheryl Polydor, Esq.

78. On or about March 28, 2006, Defendant permitted Plaintiff to return to work.

79.. Defendant has continued to request and seek reassignment since her return to work.

80. Defendant to date has failed to provide Plaintiff with reassignment or other appropriate reasonable accommodation.

81. The Plaintiff has complied with all requirements of the federal sector EEO process, by making a timely request for counseling, participating in counseling, and then timely filing a Formal EEO Complaint with Defendant, which Defendant wrongfully dismissed. Thus, the Plaintiff has exhausted her administrative remedies and now comes before this Court to seek relief.

### VIII.  COUNT ONE: DISABILITY DISCRIMINATION - FAILURE TO ACCOMMODATE PLAINTIFF'S DISABILITY IN VIOLATION OF THE REHABILITATION ACT

82. Plaintiff hereby incorporates paragraphs 1-81 above by reference.

83. Plaintiff has a mental "disability" as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. § 12102(2), which is the definition used in discrimination complaints brought under the Rehabilitation Act. 29 U.S.C. § 791(g) (2005).

84. Plaintiff is also a "qualified individual with a disability" as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111(8), which is the definition used in discrimination complaints brought under the Rehabilitation Act. 29 U.S.C. § 791(g).

85. Defendant had notice of both the Plaintiff's disability and the Plaintiff's request for reasonable accommodation.

86. Defendant's refusal and continued refusal to provide reasonable accommodation for the Plaintiff's disability is in violation of the Rehabilitation Act, as amended. Id. § 791.